## CUMMINGS v. GARNER.

1. EQUITY — JURISDICTION — CONSTITUTIONAL LAW — CLOUD UPON TITLE.

Under a bill questioning the constitutionality of the Covert act (Act No. 59, Pub. Acts 1915, as amended by Act No. 310, Pub. Acts 1915, and Act No. 125, Pub. Acts 1917) authorizing improvement of highways and assessments for benefits that became a lien upon the lands of individual owners and constituted clouds upon the titles, equity had jurisdiction, and such testimony as plaintiffs deemed necessary to raise the constitutional question was properly received.

2. HIGHWAYS AND STREETS — IMPROVEMENT OF HIGHWAY — CERTIORARI—COLLATERAL ATTACK—COVERT ACT.

Where a township and individual landowners did not avail

themselves of the remedy by certiorari provided in the Covert act (Act No. 59, Pub. Acts 1915, as amended by Act No. 310, Pub. Acts 1915, and Act No. 125, Pub. Acts 1917), to review the proceedings of the road commissioners in improving a certain highway, they could not attack the same collaterally in a suit in equity, in the absence of fraud, if said act is constitutional.

3. SAME—COVERT ACT—REMEDY FOR REVIEW COMPLETE.
Provisions of the Covert act reviewed and *held*, to provide a full, adequate, and complete remedy for reviewing and testing the proceedings of the board of road commissioners.

4. SAME—APPLICATION FOR IMPROVEMENT—JURISDICTION.
Where the Covert act prescribes what the application for a road improvement thereunder shall contain, in substance, a clause providing that the road commissioners shall apportion not less than 25 per cent. nor more than 75 per cent. of the total cost of the improvement to the road assessment district and the remainder to the county and townships, provided in said act and objected to as unconstitutional, not made a requisite of the application, cannot affect the jurisdiction of the commissioners whether included or excluded.

5. SAME—PARTIES—RIGHT TO OBJECT TO JURISDICTION—APPLICATION CONFERS JURISDICTION.
Plaintiffs not parties to the application for the improvement, whose only interest therein is that they are assessed for benefits, who had notice of the filing of, and the hearing on, the application, and did not object to the jurisdiction of the board because of a claimed invalid provision, are in no position to object thereto on appeal, since it is the application that confers jurisdiction.

6. CONSTITUTIONAL LAW—STATUTES—VALIDITY.
Unless a statute violates some express provision of the Constitution it must be held to be valid.

7. SAME — TAXATION — LOCAL IMPROVEMENTS — HIGHWAYS AND STREETS.
Section 3 of article 10 of the State Constitution, relating to uniformity of taxation, has no application to assessments for local improvements.

8. HIGHWAYS AND STREETS—COVERT ACT—ASSESSMENT OF BENE-
FITS—CONSTITUTIONAL LAW.

A provision in the Covert act (Act No. 59, § 17, as amended
by Act No. 310, Pub. Acts 1915, and Act No. 125, Pub. Acts
1917), passed following the adoption of section 26, Art. 8,
of the Constitution, providing for the improvement of
highways, requiring the road commissioners to apportion
not less than 25 per cent. nor more than 75 per cent. of
the total cost of an improvement to the road assessment
district and the remainder to the county and townships,
*held*, not an arbitrary requirement inconsistent with the
rule of assessment according to benefits.

9. CONSTITUTIONAL LAW—STATUTES—TEST—PROHIBITED POWERS.

The question is not whether the power to pass an act, which
is sought to be upheld, has been granted, but rather
whether it has been prohibited by the Constitution.

10. SAME—HIGHWAYS AND STREETS—ASSESSMENT OF BENEFITS—
STATUTES.

The test as to the validity of the provisions of a statute rela-
tive to assessments for benefits from a highway improve-
ment, is whether said provisions make it legally impos-
sible for the assessing officers to apportion the tax accord-
ing to benefits and with proximate equality.

11. HIGHWAYS AND STREETS—TAXATION—ASSESSMENT DISTRICTS—
POWERS OF LEGISLATURE.

It is the province of the legislature, directly or by delega-
tion, to establish the special assessment district, determine
the amount of the special assessment, and the rule of ap-
portionment, and where the rule of apportionment is ac-
cording to the special benefits derived the application of
that rule may be effected by the employment of any
method which will accomplish that purpose.

12. SAME — COVERT ACT — CONSTRUCTION — ZONES OF TAXATION —
VALIDITY.

Section 79 of Act No. 125, Pub. Acts 1917, amending the
Covert act, providing for zones of taxation for special
benefits derived from the improvement of a highway is not
objectionable, since the plain intent and purpose of the
method there proposed is to apportion the cost equally
upon all standing in like relation.

13. CONSTITUTIONAL LAW—STATUTES—TEST.

It is not what may have been done under the provisions of the statute in the instant case but what may be done under them to give force and effect to the intent of the act without offending any express provision of the Constitution, which should determine its constitutionality.

Appeal from Oakland; Lamb (Fred S.), J., presiding. Submitted January 19, 1921. (Docket No. 39.) Decided March 30, 1921.

Bill by Homer Cummings and others against Robert Garner, Thomas Lytle and John A. Adams, board of county road commissioners of Oakland county, to set aside a special assessment for the construction and improvement of a highway. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Frank W. Atkinson,* for plaintiffs.

*James H. Lynch,* for defendants.

*Miller, Canfield, Paddock & Perry* and *John C. Spaulding,* for intervening bondholders.

MOORE, J. The bill of complaint in this cause was filed to set aside a special assessment for the construction and improvement of a certain highway known as road No. 4, situated in the county of Oakland, and, at the time of the filing of the bill, being constructed under the provisions of Act No. 59 of the Public Acts of 1915 (1 Comp. Laws 1915, § 4671 *et seq.*), as amended by Act No. 310 of the Public Acts of 1915, and Act No. 125 of the Public Acts of 1917. The primary purpose of the bill was to clear the title of lands in West Bloomfield township and the premises included in the special assessment district from the cloud incident to said special assessment.

The trial court dismissed the bill of complaint. The

case is brought here by appeal. Counsel have filed in this court very able briefs. The case was fully and ably argued. The same claims were made in this court that were presented and considered as appears by a written opinion filed by the trial judge. That opinion states the questions involved and the disposition that should be made of them so well that it has our approval. It reads as follows:

"The cause was heard on pleadings and proofs taken in open court. The bill was filed to set aside a special assessment for the construction and improvement of a certain highway known as road No. 4, to clear the title of the lands in said West Bloomfield township and the premises included in said assessment from the cloud incident to said special assessment, to restrain the further improvement of the said highway, to cancel the contract therefor, to restrain the contractor from proceeding further with the construction and improvement of said highway, to restrain the delivery of the bonds issued to obtain the money with which to make said improvement and to construct said highway and that the same be surrendered up to the road commissioners to be canceled, and to decree that any assessment levied or attempted to be levied upon lands situated in said township of West Bloomfield for the construction and improvement of said highway is void and unenforceable.

"The grounds upon which the relief prayed for are predicated are as follows:

"1. Because the Covert act so-called, and particularly section 17 of Act No. 59 of the Public Acts of 1915, as amended by Act No. 310 of the Public Acts of 1915, and section 79 of Act No. 125 of the Public Acts of 1917 are unconstitutional.

"2. Because the proceedings taken by the board of county road commissioners are defective in the following particulars: (a) The petition is based on section 17 of Act No. 59 of the laws of 1915, which is unconstitutional; (b) the assessment is made on the acreage basis and the assessment district is divided into zones; (c) the road is not constructed where asked for in the petition; (d) the board did not acquire jurisdiction to construct the road because it was viewed by only one member of the board;

(e) the assessment district does not include all property 'fronting upon' the proposed improvement.

"3. Because the act itself and the amendments thereto, do not provide an adequate and complete method of reviewing the proceedings of the county board or the board of review provided by the act.

"From the pleadings and proofs it appears: That at the time complained of in the bill of complaint the county of Oakland was working under the provisions of the so-called county road system, and that Thomas Lytle, Robert Garner and John A. Adams then constituted the board of road commissioners for said county.

"That on the 20th day of March, 1917, certain freeholders and owners in fee-simple of land fronting on the highway which it was proposed to improve, being a majority of the owners of land fronting upon said highway, filed a petition with the board of county road commissioners, under the provisions of Act No. 59 of the Public Acts of 1915, praying, among other things, that the said road commissioners construct and improve said highway under the provisions of said Act No. 59, of the Public Acts of 1915, as amended, assessing not less than 25% nor more than 75% of the cost of the improvement upon an assessment district to be laid out by the road commissioners, and in said petition describing the highway proposed to be improved as follows: 'Commencing at the dividing line between sections 2 and 3, in Farmington township, then south along the dividing line between sections 10 and 11, 14 and 15, 22 and 23, 26 and 27, to the intersection of Grand River avenue, so-called, all in said township of Farmington,' a part of which road has been a public highway for upwards of 25 years, and under the control of the said township of Farmington.

"That on the 30th day of April, 1917, the said board of county road commissioners made its preliminary order of determination, signed by Commissioners Robert Garner and John A. Adams; Thomas Lytle was interested in the proposed improvement and did not sign the order.

"That on the 3d day of May, 1917, the board of road commissioners made their first order of determination, in which it is stated that the petition had been filed, a survey, specifications and estimates and an examina-

tion of the land to be benefited by the proposed improvement, determining that the petition should be granted and the road constructed according to such specification; that the district should be known as assessment district No. 4, and that the description and direction of the road should be as herein set forth, and that the boundaries of the assessment district should be such as shown by the plat attached thereto.

"That on the same day, May 3, 1917, gave the required notice to the freeholders of the townships of Farmington and West Bloomfield of their first order of determination and that they would meet on the 25th day of May, 1917, for the purpose of hearing objections to the proposed improvement, and further giving notice that it was the intention of the board of road commissioners to assess upon all lands within the boundaries of the assessment district as described in the notice, for benefits on account of the improvement of said highway according to the plans and specification on file; that the highway proposed to be constructed would be a class 'F' road with concrete surface; and that the said notice was duly published and posted as required by law.

"That on the 25th day of May, 1917, the hearing was had as noticed; that the entire cost to be assessed to the townships of Farmington and West Bloomfield was changed from 25% to 20%.

"That on the 2d day of July, 1917, the board of county road commissioners made their final order of determination, in which they found as a fact that no objections to the proposed improvement in said special assessment district had been filed in writing, and determined that the improvement should be made in accordance with the specifications attached to the said final order, and that the assessment district should contain all lands within the boundaries as set forth in the plat and included lands in both townships of Farmington and West Bloomfield and lands belonging to the individual petitioners herein before named.

"That on the 5th day of July, 1917, the board caused a notice of letting of contract for the proposed improvement of said highway and asking for sealed bids, funds to be secured by sale of bonds upon a tax upon a special assessment district, the townships of Farm-

ington and West Bloomfield, and the county of Oakland, to be duly published and posted as required by law; that the said notice was signed by Commissioners Robert Garner and John A. Adams only, Commissioner Thomas Lytle being disqualified.

"That on the 20th day of July, 1917, the bid of R. D. Baker Company for the construction of said improvement was accepted, contract entered into and the required bond given.

"That on the 4th day of September, 1917, the board of road commissioners gave the required notice of special assessment of said road district No. 4 to the freeholders of the townships of Farmington and West Bloomfield, and that all lands in said townships within the boundaries of the said special assessment district would be liable for assessment for benefits; and that on the 25th day of October, 1917, they gave a second notice in which a time was set for a review of said special assessment roll, as of the 7th day of November, 1917; and that on the 7th day of November, 1917, such public hearing was held as per notice and a certificate made by said road commissioners to the effect that in accordance with the statute they had given full opportunity for objections to the proposed apportionment of benefits for the construction of said highway, that they had equalized the same by making such changes and corrections as would be deemed just and equitable, and determined and declared that the apportionment of benefits as therein stated should be approved and was then and there approved and ordered filed with the clerk of Oakland county and the clerks of the townships of Farmington and West Bloomfield; and it further appears that on said hearing held as aforesaid, that no written objections were filed by or in behalf of any of the municipalities or individuals interested.

"That on the 16th day of November, 1917, the township of West Bloomfield took an appeal in accordance with the statute, a board of review, consisting of Sylvester Pheney, C. V. Taylor and A. L. Ross, was appointed by the probate court and the hearing fixed for and had on the 26th day of November, 1917, and on the 13th day of December, 1917, the said board of review confirmed the assessment as determined by the

board of county road commissioners; and that no further or other proceedings were taken by the township of West Bloomfield to review the proceedings of the board of county road commissioners in relation to said improvement.

"That no appeal was taken by any of the individual plaintiffs, no objections to any of the proceedings were filed with the road commissioners, and no writ of certiorari has been sought or asked for on the part of any of the plaintiffs in relation to said improvement.

"That after the time had elapsed in which an appeal might be taken or the writ of certiorari taken out under the statute, the board of county road commissioners made an order in writing that bonds be issued for the construction of said highway to the amount of $121,200, of which amount $60,700 were to be issued on the faith and credit of assessment district No. 4, $24,200 on the faith and credit of the townships of Farmington and West Bloomfield, and $36,300 on the faith and credit of the county of Oakland.

"That on the assessment roll the total amount to be raised for the said improvement was $128,669.52, of which 50% or $64,336.76 was to be spread upon road district No. 4, 30% or $38,600.86 was to be spread on Oakland county at large, 15% or $19,300.43 was to be spread on the township of Farmington at large, and 5% or $6,433.48 was to be spread on the township of West Bloomfield at large.

"That in determining to what extent the individual properties in road district No. 4 were specially benefited by the proposed improvement, the board of county road commissioners made use of the provisions' of section 79 of Act No. 125 of the Public Acts of 1917; that as a result thereof the lands situated on the west side of the proposed improvement were subdivided into ten parts or zones of assessment, and the lands on the east side of the said improvement were subdivided into six parts or zones of assessment.

"That on the 4th day of June, 1918, bonds issued to raise funds for said improvement were delivered to F. C. Hoehler & Co. and the funds amounting to the sum of $121,200 were then received and deposited in the county treasury.

"That no part of the highway in question lies with-

in the township of West Bloomfield, but that the northern terminus thereof is the east and west town line road between the townships of Farmington and West Bloomfield; and that the township of West Bloomfield as a municipality is assessed for the said improvement, and the individual plaintiffs herein, as residents and property owners of a part of West Bloomfield township, are assessed for benefits as a part of road district No. 4.

"That the assessment for benefits upon the special assessment district was made upon the acreage basis under and pursuant to the provisions of the so-called 'Covert law.'

"That the proposed highway is 4.997 miles in length; that the contractor, R. D. Baker & Company, proceeded in the fall of 1917 to the construction of said improvement and continued in the spring of 1918, was engaged in work thereon, at the time of the commencement of this case; and that at the time the bill was filed in this cause, the proposed highway was about half completed; that it has since been completed and opened to the public.

"That the benefits assessed upon the lands of the individual plaintiffs herein constitute liens upon said lands.

"That lands fronting on and adjacent to said improvement and within the corporate limits of the village of Farmington were not assessed for said highway; and that not all of the lands equally distant from said improvement were assessed for said highway construction.

"That none of the plaintiffs herein joined in the petition for the construction of the improvement herein involved.

"That neither fraud nor mistake on the part of the defendants, or any of them, is either alleged in the bill of complaint or attempted to be established by the proofs.

"Discussion and Conclusions.

"It was urged by the defendants, at the hearing, that a bill in equity would not lie, and that the remedy, if any, was at law. But in view of the fact that the

213—Mich.—27.

question of the constitutionality of the law under which the proceedings to lay out the improvement were had was raised by the bill, and in consideration of the further fact that as soon as the assessments became liens upon the lands of the individual owners they constituted clouds upon the titles thereof, thus bringing the bill within the well-recognized ground of equity jurisdiction, the plaintiffs were permitted to submit such testimony as they deemed necessary to raise the constitutional question. This conclusion is supported by the authorities. 1 High on Injunction (4th Ed.), § 496; *Bristol* v. *Johnson*, 34 Mich. 123; *Loomis* v. *Rogers*, 197 Mich. 265.

"The specific relief sought by the plaintiff, township of West Bloomfield, is to have the assessment of 5% against the municipality set aside, and that by the individuals to have the liens created by the special assessment removed as clouds upon the titles to their lands. All base their prayer for relief upon the same three grounds, viz.:

"(1) That the Covert act, so-called, as then in force, was unconstitutional and void; (2) that all proceedings had under it were defective and without force or effect; (3) that the act itself provides no complete and adequate remedy for review of the proceedings under it.

"If the law here involved was constitutional in all the essential features and provisions necessary to carry out the intent of the legislature in passing it, and if there was no valid constitutional objection to the jurisdiction of the board of road commissioners of which the plaintiffs are in position to complain, then the case must fall, as by the very filing of the bill, in view of the record made as above outlined, the plaintiffs did what the law involved expressly prohibits them from doing. The Covert law, then in force, provided for review by certiorari of the proceedings of the board of road commissioners, couched in the following language:

"'And the circuit court shall hear and determine the same without delay; and if any material defect be found * * * such proceedings shall be set aside in so far as erroneous. * * * The entire proceedings shall not be set aside except where the county road commissioners are found to have no jurisdiction to

act upon the petition presented. * * * If no certiorari be brought within the time herein described, the improvement shall be deemed to have been legally ordered and established, and its legality shall not thereafter be questioned in any suit at law or in equity.'

"The Covert law in many of its essential features and provisions follows similar provisions found in the drain law of the State, upon which the Supreme Court of the State has had many an occasion to pass and whereupon they have universally held that the proceeding by certiorari provided by the drain law is the exclusive remedy in the absence of fraud. Fraud is neither alleged nor proved in the instant case.

·"The court indicated in the recent case of *McDermott* v. *Kent County Road Com'rs,* 199 Mich. 616, that its holdings in the drain cases, involving similar provisions, should be considered the law as applied to the Covert act.

"In view of the fact as above found, that neither the township of West Bloomfield nor the individual plaintiffs took any action by certiorari to review the proceedings of the road commissioners upon the question of jurisdiction or otherwise, they cannot now attack the proceedings collaterally, under repeated decisions of the court of this State. *Crandall* v. *McElheny,* 146 Mich. 192; *Jones* v. *Gable,* 150 Mich. 32; *Township of Clinton* v. *Teachout,* 150 Mich. 128; *Grandchamp* v. *McCormick,* 150 Mich. 232; *Troost* v. *Fellows,* 169 Mich. 70; *Duryea* v. *Edinger,* 169 Mich. 222.

"If the Covert law is constitutional, the cases just cited and others to which attention might well be called are an effective bar to any attempt by bill in equity or suit at law to test or review the proceedings of the board of road commissioners, in absence of fraud, both as to their legal effect and to defects in the administration of the law under the conceded facts in this case. They also render inadmissible all testimony offered to question the legality of the action of the board of the finality of the exercise of its discretion and judgment in the determination of the necessity for the improvement, the limits of the special assessment district, the per cent. of benefit derived by the district, the townships and the county at large, and the apportionment thereof. The second contention of the plain-

tiffs and the exception to the holding of the court in the admissibility of testimony offered at the hearing must be held to be without merit.

"It is urged as a third ground for relief that the act in question does not provide a complete and adequate remedy for reviewing and testing the proceedings of the board of road commissioners. While this claim might well be discussed in connection with plaintiffs' contention that the law is unconstitutional and void, yet, as it has been separately raised in their brief and is of vital importance, if tenable, it will be discussed separately.

"It must be borne in mind in the consideration of this contention that the questions calling for review in proceedings of the character covered by this law, naturally and of necessity divide themselves into two distinct classes: (1) Those that are purely legislative; (2) those that are essentially judicial. If the law adequately takes care of both, then it is not open to the infirmity urged.

"The Covert act, as in force at the time these proceedings were perfected and carried out, provided, in the first instance, for an *ex parte* determination of the necessity for the improvement contemplated, and then, upon notice to all parties in interest, a public hearing, upon which the final determination was based, was provided. The boundaries of the district specially benefited, the per cent. of benefit derived by the lands therein, the township or townships benefited and the per cent. of such benefit, and the per cent. of benefit derived by the county at large, are all matters to be determined first by the board of road commissioners and then all are subject to review by an impartial tribunal appointed by the probate court for that special purpose, to which hearing on review all parties are given due and timely notice and provided full and adequate opportunity to be heard. It has been held time and again that these questions are purely legislative in character and must be left to the agencies provided by legislative authority, and so long as a free and fair opportunity is given to be heard no one is in position to complain and no question of judicial cognizance is raised. *Troost* v. *Fellows*, 169 Mich. 70; *Township of Clinton* v. *Teachout*, 150 Mich. 124.

"Section 66 of Act No. 125 of the Public Acts for the year 1917 provides for the review by the courts on writ of certiorari of the proceedings of the road commissioners in the making of improvements provided by the law in question. A like provision in the drain law has been held to be a complete and adequate remedy for the review of the legality of proceedings to establish a public drain. For the same reasons and to effectuate the same purpose the same rule should apply to the proceedings establishing roads under the act in question. *Grandchamp* v. *McCormick*, 150 Mich. 232; *Crandall* v. *McElheny*, 146 Mich. 191.

"Unless we are to hold that it should be left to the individual or a municipality to effectually nullify the plain intent and purpose of the legislature in promulgating such legislation, by interminable proceedings at law or in equity, it should be held here as in the case of drains that there is a full, adequate and complete remedy provided by the Covert act.

"The other questions and objections, raised by the plaintiffs at the hearing and on argument, are so intimately connected in substance and effect with the general objection that the law is unconstitutional and void they may and will be considered and discussed under that head.

"Objection is made to the jurisdiction of the board of road commissioners to act upon the petition or application presented to it asking for the improvement under consideration for the reason that such application contains the following provisions: 'Assessing not less than 25% nor more than 75% of the cost of improving such highway upon an assessment district to be laid out by the said board of county road commissioners for that purpose,' claiming that the clause is an arbitrary limitation on the exercise of the discretion and judgment of the road commissioners when determining the question of benefits in the establishment of the district to be benefited and being such is unconstitutional and void and the application conferred no jurisdiction upon the commissioners to act.

"This objection gives rise to two questions: 1st. Are the plaintiffs, or any of them, in position to raise it? 2d. Is the objection a valid constitutional one? The application was filed in pursuance of the provisions of

Act No. 59 of the Public Acts of 1915 as amended by Act No. 310 of the Public Acts of 1915. Section 17 of the act, in which the objectionable provision is found, read, at the time of the filing of the application, as follows:

" 'The county road commissioners shall apportion the per cent. of the total cost of construction of such improvement, which the county at large shall be liable to pay by reason of the benefit to the public convenience and welfare, and as a means of improving the highway, and shall apportion the per cent. of the cost of the construction of such improvement for the same reasons that any township traversed or benefited thereby shall be liable to pay. They shall also apportion the per cent. of benefits to accrue to any piece or parcel of land for the reasons aforesaid, by reason of the construction of such improvement over and above the per cent. assessed against the county at large, and against the townships at large aforesaid, which per cent. of benefits shall be apportioned upon and assessed against the lands benefited, according to the benefits received, and which apportionments they shall announce at the time and place of hearing objections to, and equalizing the apportionment of benefits. Such assessment of per cent. for benefits shall thereupon be subject to review and correction and may be reviewed in the manner herein provided. All appeals in this act provided for shall be from the apportionment of the per cent. of benefits. The county road commissioners shall apportion not less than twenty-five per cent. nor more than seventy-five per cent. of the total cost of the improvement to the road assessment district, and the remainder to the county and townships. The county road commissioners shall designate each assessment district by number by which number it shall thereafter be known.'

"It is the application that confers jurisdiction upon the road commissioners to act. The application is a statutory requirement. There is no prescribed form of application. The act itself provides what it shall contain in substance. The offending clause is nowhere made a requisite of the application. Its inclusion or exclusion could neither take away nor give jurisdiction. If the application contained the essentials prescribed by the statute, then, whether the offending clause was in or out would in no way concern the plaintiffs. None of them were parties to the application

for the improvement. Their only interest therein is that they are assessed for benefits.

"Plaintiffs had notice of the filing of and the hearing on the application. None of them either raised or filed in writing any objections to the jurisdiction of the board to act thereon. Later, and after the final order of determination had been made by the board of road commissioners, one of the plaintiffs, the township of West Bloomfield, appealed to the board of review, appointed by the probate court, the question of benefits to the said township, thereby recognizing the validity of the orders made by the road commissioners in its action on the application filed with it. Neither the township nor any of the individual plaintiffs made any attempt to test the jurisdiction of the board to act or the regularity of its action on the application. In face of such conditions they must be held to be in no position to complain.

"The application is not a constitutional requirement. That one is required as a basis of the proceedings under the act, what it shall contain, by whom and by what portion of those immediately interested it shall be signed, and the extent of the improvement are purely statutory requirements to give the board jurisdiction under the act. No one questions but that the application filed with the board in this case contained those requisites. That it should contain the objectionable clause is required neither by the constitution nor the statute. Surely it will not be contended that the test of jurisdiction is what the application contains regardless of jurisdictional requisites.

"In this connection, let it be said that section 17, as it existed at the time of the filing of the application in dispute, and in which the objectionable provision is found is the statutory declaration of how the assessment for such improvement shall be apportioned, after the necessity for the improvement and the total cost thereof has been determined. Up to that point in the proceedings it cannot have and was not intended by the legislature to have any force or effect. The vice of a provision, if it exists, must be looked for and determined by the connection in which it is of use and be judged by the purpose it was intended to fulfill. Applying this test to the instant case and it must be held

that there was no valid constitutional objection to the jurisdiction of the board of road commissioners in entertaining and acting upon the application filed.

"The case of *Township of Clarence* v. *Dickinson,* 151 Mich. 270, is both illuminating and instructive in relation to the two questions just discussed, and in my judgment, deposes of both against the contention of the plaintiffs.

"It is the further contention of the plaintiffs that sections 17 and 79 of the Covert law, so-called, being Act No. 59 of the Public Acts of 1915 as amended by Act No. 310 of the Public Acts of 1915, and Act No. 125 of the Public Acts of 1917, are unconstitutional and void and so interdependent upon the other provisions of the act in the practical application thereof as to render the law void *in toto.*

"It is settled, by the authorities, beyond controversy, that unless a statute violates some express provision of the Constitution it must be held to be valid. In Cooley's Constitutional Limitations (6th Ed.), p. 200, we find:

" 'The rule of law upon this subject appears to be that, except where the constitution has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operate according to natural justice or not in any particular case. The courts are not the guardians of the rights of the people of the State except as those rights are secured by some constitutional provision which comes within the judicial cognizance. The protection against unwise or oppressive legislation, within constitutional bounds, is by appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can correct the evil; but courts cannot assume their rights. The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon points of rights, reason and expediency with the law-making power. Any legislative act which does not encroach upon the powers apportioned to the other departments of government being *prima facie* valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the constitution and the case shown to come within them.'

"In 1 Lewis' Sutherland, Statutory Construction, §

85, it is laid down as a governing principle in statutory construction as follows:

" 'Statutes cannot be declared invalid on the ground that they are unwise, unjust, unreasonable, or immoral, or because opposed to public policy, or the spirit of the constitution. Unless a statute violates some express provision of the constitution, it must be held to be valid.'

"In the case of *Scott* v. *Smart's Ex'rs,* 1 Mich. 307, the Supreme Court held:

" 'For us to hold a law unconstitutional, it must be a plain violation of some provision contained in the Constitution.'

"In the case of *Tyler* v. *People,* 8 Mich. 333, we find the court reiterating its holding in the case of *Sears* v. *Cottrell,* 5 Mich. 251, as follows:

" 'In *Sears* v. *Cottrell,* 5 Mich. 251, we stated in substance, if not in words, that to warrant us in declaring a statute unconstitutional, we should be able to lay our finger on the part of the Constitution violated, and that the infraction should be clear, and free from a reasonable doubt. We still adhere to the views then expressed.'

"The foregoing principles, though early laid down by our Supreme Court, have been consistently adhered to all along the line of our judicial history. See in this connection the recent case of *Daugherty* v. *Thomas,* 174 Mich. 371 (45 L. R. A. [N. S.] 699, Ann. Cas. 1915A, 1163).

"The plaintiffs claim that the specific provision of the Constitution that was violated by the sections of the Covert law above referred to is section 3 of article 10 relating in terms to uniformity of taxation. It is well settled in this State that the provision of the Constitution above referred to has no application to assessment for local improvements.

"In the case of *Woodbridge* v. *City of Detroit,* 8 Mich. 274, it is held:

" 'The provisions of the Constitution, with respect to taxation, do not apply to assessments for local improvements; and valuation of the property taxed for such improvements is not a necessary element in the apportionment of the taxes.'

"In the case of *Motz* v. *City of Detroit,* 18 Mich. 495,

522, Chief Justice COOLEY, speaking for the court, said:.

" 'It has been decided by this court that local assessments for local improvements, without regard to valuation, are admissible under the Constitution. A due respect to our predecessors, I think, and to uniformity and stability in judicial action, demand that we shall recognize this point as no longer open to controversy.'

"In the recent case of *City of Detroit* v. *Weil,* 180 Mich. 598, it is held:

" 'It is well settled in this State that the rule of uniformity of taxation provided for in the Constitution of the State has no application to assessments for local improvements.'

"In the case of *Loomis* v. *Rogers,* 197 Mich. 265, it is again held:

" 'A special assessment for the improvement of a highway under the Covert act is not a tax within the constitutional provision as to uniformity of taxation.'

"It is recognized by the Supreme Court of this State that the improvement in question in this case is a local improvement within the principles laid down by the cases just cited.

"In the case of *Loomis* v. *Rogers,* 197 Mich. 281, our court uses the following language in this respect:

" 'We find nothing in our present Constitution which forbids the legislature placing a just portion of the burden of a highway improvement on a specially benefited district and levying assessments for special benefits conferred upon property, although benefits are also conferred thereby upon the community or State at large.'

"In the case of *Murray* v. *Smith,* 117 Minn. 490 (136 N. W. 5, 40 L. R. A. [N. S.] 173, Ann. Cas. 1913D, 548), the court held as follows:

" 'The weight of authority today seems to be to the effect that a highway may be a local improvement, and an assessment of lands specially benefited may be sustained.'

"Section 26 of article 8 of the State Constitution gives countenance to the same idea in conferring upon the legislature the authority to provide for the laying

out, construction, improvement and maintenance of highways by the State and by counties and by townships thereof and by road districts.

"This section was adopted as an amendment to the Constitution at the April election, 1917, and was followed by the passage of Act No. 125 of the Public Acts of 1917, which was given immediate effect, on the 25th day of April of the same year. And it is under and by virtue of the provisions of such act that the proceedings in the instant case were in a large measure had.

"Notwithstanding the provisions of the Constitution and the authorities cited above, the plaintiffs still claim the right to invoke the infirmity of section 17 of the statute in question under the principles underlying the decisions in the following cases: *Jones* v. *Water Com'rs*, 34 Mich. 273; *Thomas* v. *Gain*, 35 Mich. 155; *Chaffee's Appeal*, 56 Mich. 244; *City of Detroit* v. *Judge of Recorder's Court*, 112 Mich. 588 (42 L. R. A. 638); *Loomis* v. *Rogers*, 197 Mich. 265.

"This contention is based upon the theory that the provision in the Covert act, reading as follows: 'The county road commissioners shall apportion not less than 25 per cent. nor more than 75 per cent. of the total cost of the improvement to the road assessment district and the remainder to the county and townships,'—is an arbitrary edict and beyond the power of the legislature. In view of the authorities cited under another head in this discussion, it is not beyond the power of the legislature unless it offends some express provision of that instrument. With this in mind let us turn our attention to the cases just above cited by the plaintiffs.

"The case of *Jones* v. *Water Com'rs* has no semblance of application, as water rates are in no sense taxes and are not governed by the fundamental principles of taxation nor by the principles underlying assessments for local improvements.

"The case of *Thomas* v. *Gain* grew out of an attempt to apportion a sewer tax in manifest disregard of justice and equity and had no lawful principle to sustain it. This case stands by itself and is authority only as applied to its peculiar circumstances. There is not the slightest semblance of similarity between the facts in that case and those in the case now before the court.

"*Chaffee's Appeal* involved a street opening and was decided upon the question of the right of eminent domain. This question is not involved in the instant case. It also contains a discussion of the principles underlying general taxation, but those principles are not involved in assessment for local improvements.

"*City of Detroit* v. *Judge of Recorder's Court* was a street opening case under an act authorizing the taking of private property for public use and requiring at least one-half of the amount awarded as compensation to be assessed upon the district fixed by the common council. No provision was made in the act requiring the assessment to be made according to resulting benefits, but was plainly an arbitrary assessment without any regard whatever to benefits. Requiring a portion of the damages sustained by this very property to stand a portion of that damage was a plain violation of the principle that private property shall not be taken for public use without compensation. The case can have no value as authority when we are considering a law, the fundamental basis of which is that all percentages of the cost shall be apportioned upon the district and the municipalities affected according to the· actual benefits derived by each. Justice GRANT makes the distinction clear in the use of the following language:

" 'The legislature has no power to fix an arbitrary percentage of a public improvement to be imposed upon a local assessment district, regardless of the benefits received.'

"It is the claim of the plaintiffs that the Supreme Court, in the case of *Loomis* v. *Rogers*, 197 Mich. 265, held the objectionable provision in section 17 to be unconstitutional. I am not satisfied from a careful reading of the case that the court so held. If I were so satisfied, I would not attempt to discuss the question further. All the court decided or intended to decide in that case, so far as this provision is concerned, was that, if it was unconstitutional, the section and the law were workable without it. The question raised and discussed in this regard was whether,. if the provision were offensive to any constitutional requirements, it thereby invalidated the whole act. Holding that it did not invalidate the whole act is not equivalent to hold-

ing that the provision does violate the Constitution. Taking this view, I shall proceed to discuss the question of its constitutionality.

"The vice complained of in relation to the minimum and maximum clause limiting the cost of the improvement to be apportioned upon the special assessment district is that it is inconsistent with the rule of assessment for benefits, nullifies it, and thus provides an arbitrary assessment without regard to benefits.

"At the outset, it may not be out of place to remark that we are not concerned with interpreting the Covert law by reference to what had been done under it as shown by the record in this case; but we are concerned, and are attempting to discover whether the purpose and intent of the legislature in passing the Covert law can be carried into effect without violating any express provision of the Constitution or overriding any of its implied inhibitions or restrictions. To accomplish this purpose it will be necessary for us to be concerned with what may be done under it to make it workable and still keep within the fundamental law.

"In this State the question is not whether the power to pass the act, which is sought to be upheld, has been granted, but rather whether it has been prohibited by the Constitution. This distinction is vital and must be held in mind in the consideration of the question before us.

"In the case of *Sears* v. *Cottrell*, 5 Mich. 259, Justice CHRISTIANCY says:

"'No rule of Constitution is better settled in this country, both upon principle and authority, than that the acts of the legislature are to be presumed constitutional until the contrary is shown; and it is only when they manifestly infringe some provision of the Constitution that they can be declared void for that reason.'

"It becomes pertinent, then, to inquire what powers the legislature has been held to possess as bearing upon what the legislature of this State did in passing the Covert act with the offending clause included.

"In *Loomis* v. *Rogers*, 197 Mich. 265, our court has held:

"'We find nothing in our present Constitution which forbids the legislature placing a just portion of the burden of a highway

improvement on a specially benefited district, and levying assessments for special benefits conferred upon the property, although benefits are also conferred upon the community or State at large.'

"In *Williams* v. *Eggleston*, 170 U. S. 304, (18 Sup. Ct. 617), the Supreme Court of the United States has held:

" 'Neither can it be doubted that, if the State Constitution does not prohibit, the legislature, speaking generally, may create a new taxing district, determine what territory shall belong to such district and what property shall be considered as benefited by the proposed improvement.'

"In McQuillin on Municipal Ordinances, page 821, we find it stated thus:

" 'It is within the power of the legislature to create special taxing districts, and charge the cost of a local improvement, in whole or in part, upon the property in said district, either according to valuation or superficial area or benefits.'

"In *Cote* v. *Village of Highland Park*, 173 Mich. 208, it is laid down as follows:

" 'It is now well settled in most jurisdictions that adjacent property may be specially assessed to defray, in whole or in part, the cost of local improvements by which such property is specially benefited.'

"In *Voigt* v. *City of Detroit*, 123 Mich. 550, it is held:

" 'The right of the legislature to establish special assessment districts, in which all the taxes necessary to be raised to pay for a local improvement may be assessed, was for a time questioned, but that right has been so often sustained by the courts that it is no longer open to question.'

"Upon another question closely akin to the one sustained by the authorities just cited, we find it held in the case of *Troost* v. *Fellows*, 169 Mich. 70:

" 'The legislature had the undoubted power to commit to these statutory officers the ascertainment of the lands to be assessed, as well as the apportionment of benefits.'

"From these authorities it is clear that the legislature has the power to establish special assessment districts for local improvements, determine the rule of

apportioning the cost thereof, and to delegate that power to local officers or boards established by law. It is likewise clear that so long as the apportionment does not exceed the special benefit derived by the district, the amount or percentage, apportioned upon the special assessment district may be the whole or any part of the total cost of the improvement.

"The force of the plaintiffs' contention as regards the clause in section 17 lies in the claim that the legislature, in delegating its power to determine the boundaries of the special assessment district and to apportion the benefits to be derived from the improvement by such district, must be held to have delegated also, without reservation or limitation, the power to determine the proportion of the cost of the improvement that the special assessment district should bear. It is only upon this theory that the action of the legislature in including the maximum and minimum clause in such section can be classified as an 'arbitrary exaction and not a legitimate exercise of legislative authority.'

"To such conclusion I cannot assent. It lies with the legislature to determine what and just how much power it delegates and to fix the conditions upon which that delegated authority shall become operative. This is what the legislature did and is clearly what it intended to do in putting in the limitation upon the amount of the cost of the improvement which might be apportioned to the special assessment district according to special benefits derived. In doing this, so long as the percentage was to be measured by the benefits, the legislature acted within its rights.

"The test of a provision of the law, when assailed as an arbitrary exaction, is whether that provision 'makes it legally impossible for the assessing officers to apportion the burden of such improvement according to benefits and with proximate equality.' When put to this test, in the light of other provisions of the act, the offending clause is amply vindicated. It surely cannot be urged with any degree of candor that a law which delegates to local officers the power to determine the extent and boundaries of the district specially benefited, the percentage of the entire cost of the improvement to be apportioned upon the district, within limitations giving a leeway of 50% of the cost, and the

unlimited authority to apportion that percentage according to benefits derived, renders it legally impossible for the road commissioners to apportion the cost according to benefits and with proximate equality.

"In this connection the case of *Murray* v. *Smith*, 117 Minn. 490, is in point, wherein it holds:

" 'Chapter 254, Laws of 1911, providing for the establishment and maintenance of highways outside of cities and villages, and for the assessment of one-fourth the cost thereof on land specially benefited, is valid, under section 1, Art. 9, of the State constitution, which requires taxes to be uniform upon the same class of subjects, but permits the legislature to authorize municipal corporations to levy and collect assessments for local improvements upon property benefited thereby without regard to cash valuation.'

"The sole question in *Murray* v. *Smith* was the constitutionality of the law. The feature assailed was the provision for the assessment of lands benefited by the highway for one-fourth of the cost. The law itself fixed definitely the percentage to be borne by the assessment district, the county and the State, leaving to the viewers the sole province of determining the boundaries of the district and the apportionment of the special benefits upon the district. The case is so manifestly in point in relation to the question raised in the instant case as to clearly justify the inclusion in section 17 of the Covert act of the clause under consideration.

"In the case of *St. Benedict's Abbey* v. *Marion County*, 50 Or. 411 (93 Pac. 231), it is held:

" 'The assessment of the cost and expense of the improvement of a county road against the real estate adjacent thereto and benefited thereby, within 2 miles on either side and 1 mile beyond the terminus of such improvement, according to the benefits derived therefrom, is not a taking of property without due process of law, nor is a road act authorizing such assessment a violation of a constitutional provision that taxation shall be equal and uniform.'

"These cases plainly establish the principle, vital in the instant case and in this connection, that in delegating its power to local officers or municipalities, the legislature has the inherent right to make such delega-

tion subject to such limitations as it may deem wise to make. Nor am I convinced, after a careful study of the case and the authorities, that the offending clause is out of harmony with the spirit and intent of the entire act. In my judgment it served and was intended to serve a twofold purpose: 1. To make more uniform the proportion of such improvements the lands receiving a special benefit, measured in dollars and cents, should bear within the limits of the special benefit received. 2. To minimize the vicious effect of local bias and prejudice. With these in mind section 17 is a harmonious whole and is workable and unobjectionable as such.

"The specific objection lodged against section 79 of Act No. 125 of the Public Acts of 1917 is that it approves of assessments for rural improvements on an acreage basis and provides for the division of the assessment district into zones, claiming, in effect, that this amounts to a distribution of the amount of the assessment against the assessment district upon the frontage basis.

"The provision of the act in question, so far as applicable in this case, reads as follows:

"'By zones of taxation is meant all lands within certain distances, fixed by the county road commissioners or State highway commissioner, from the road to be improved, as fixed when they are in fact making the apportionment of benefits, which lands are all assessed at the same rate per acre.'

"It is the province of the legislature, directly or by delegation, to establish the special assessment district, determine the amount of the special assessment, and the rule of apportionment. Where the rule of apportionment is according to the special benefits derived, the application of that rule may be effected by the employment of any method which will accomplish that purpose, whether it be by valuation, frontage, superficial area or any other method which does not lose sight of the fundamental basis of special assessments for local improvements. The authorities abundantly support this conclusion. If the determination of the rule is within the recognized power of the legislature, then, how that rule shall be applied is clearly within its authority.

213—Mich.—28.

"By the very terms of the provision complained of the fixing of the boundaries of the zones of taxation follows and does not precede the determination and apportionment of benefits. This relieves the provision of all arbitrary taint.

"It is a fundamental rule that an assessment for a local improvement should be apportioned among, and imposed upon, all equally standing in like relation. This is the plain intent and purpose of the method of distribution of the per cent. apportioned upon the special assessment district under the provisions of section 79. The lands, standing in like relation to the improvement and to each other, can be grouped together as being equally benefited. When that is done the amount to be apportioned upon the lands thus grouped can be distributed with the acre unit of area as a basis, without in any way interfering with or placing any arbitrary exaction upon the actions of the road commissioners. It will not be questioned that any method of distribution which has some tangible unit for a basis is more accurate, more practical and tends more nearly to fulfill the object of the rule of apportionment to be followed than any apportionment which may be left to the whim, bias or prejudice of the local authorities.

"It needs no argument to demonstrate that the frontage rule of apportionment is one thing and that the superficial area rule of apportionment is quite another, and while the one may not be applicable to rural improvements, the other is the recognized rule to be applied thereto. In fact, the record in the instant case shows that area and not frontage was the basis of apportionment.

"In the case of *Collins* v. *Mayor, etc., of Holyoke*, 146 Mass. 298 (15 N. E. 908), it is held:

"'As a convenient method of equitably adjusting the assessments, the members of the board might, if they saw fit, divide them into three classes: direct benefits, remote benefits and more remote benefits.'

"In the case of *Brewer* v. *City of Springfield*, 97 Mass. 152, it is held:

"'In several cases it has been decided that in assessing benefits the future probable advantages may be considered, as may

also be the incidental benefits, equally with them which the land receives directly.'

"These cases and others that I might cite, point out and uphold precisely what the offending provision in section 79 makes possible. Here, as in the discussion of section 17, it is not with what may have been done under these provisions in the instant case with which we are concerned in the determination of the question of the constitutionality of this section, but with what may be done under them to give force and effect to the intent of the act without offending any express provision of the Constitution of the State, or making it legally impossible for the county road commissioners to apportion the burden of the improvement according to benefits and with proximate equality. Put to that test, section 79 should be held to be valid and in harmony with the spirit and intent of the act of which it forms a part.

"It follows from what has been said that the Covert law as it existed, when the proceedings in the instant case were had, was constitutional and workable.

"As requested by the plaintiffs the county may be made a party in order to complete the record as provided by the Covert law.

"A decree may be prepared dismissing the bill of complaint. Costs will follow the decree."

The decree is affirmed, with costs to the appellees.

STEERE, C. J., and STONE, CLARK, BIRD, and SHARPE, JJ., concurred.

FELLOWS, J., concurred in the result.

The late Justice BROOKE did not sit.