FRISCHKORN INVESTMENT CO. *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—IMPROVEMENTS—SPECIAL ASSESSMENTS MUST ACCORD WITH BENEFITS.

Assessments for improvements must be made in accordance with benefits.

2. SAME—ASSESSMENTS CONCLUSIVE IN ABSENCE OF FRAUD, ETC.

Courts are loath to interfere with assessments for improvements unless fraud, discrimination, mistake, or absence of benefits claimed appear with certainty.

3. SAME—COURT WILL NOT SUBSTITUTE ITS JUDGMENT FOR THAT OF MUNICIPALITY IN ASSESSMENTS.

If, in assessing property for improvements, municipality acts in good faith, has good reason to believe that benefits will accrue,

As to assessments for improvements by the frontage rule, see annotation in 17 L. R. A..330; 28 L. R. A. (N. S.) 1124; L. R. A. 1917D, 372; 56 A. L. R. 941.

and there is no showing of fraud, mistake, or illegality, courts may not substitute their judgment for that of municipality.

4. SAME—BENEFITS—NEW STREET—ABUTTING PROPERTY.

Lots assessed for improvement in opening new street, on theory that benefit results to them because they abut on said street, should be relieved of said assessment, where it appears that they do not abut on said street but that triangular piece of land and public alley lie between said lots and said street.

5. SAME—CHANGING COURSE OF STREET—ABUTTING OWNER.

City may, over objection of property owner, re-route, close, or change course of highway that does not abut his property, although it may make his property less accessible to approach.

6. SAME—BENEFIT OF ABUTTING ON NEW STREET.

Where new street, as originally planned, was so routed that certain property would abut thereon, but it was re-routed so that, as completed, said property does not have benefit of abutting thereon, owner may not object that he was thereby deprived of . said benefit, since it is one that he never had.

Appeal from Wayne; Gilbert (Parm C.), J., presiding. Submitted October 21, 1931. (Docket No. 167, Calendar No. 35,627.) Decided April 4, 1932.

Bill by the Frischkorn Investment Company, a Michigan corporation, against City of Detroit, a municipal corporation, to set aside certain special assessments for street widening purposes. From decree rendered, plaintiff appeals. Modified and affirmed.

*Charles P. O'Neil,* for plaintiff.

*Walter Barlow* (*Clarence E. Wilcox,* of counsel), for defendant.

BUTZEL, J. The city of Detroit, defendant, was confronted with the problem of devising a means of

enabling vehicular traffic from the east or west side of the city to reach the other side, without passing through the congested downtown business district in the center of the city. The city plan commission had found that before the downtown stores were open for business in the morning, crosstown traffic began to open at one side and out of the other at the rate of 14,000 vehicles per hour, and that a steady stream of traffic continued throughout the day. In accordance with a petition bearing sufficient signatures, an ordinance to build a large arterial highway through the center of the city was submitted in 1922 to the electors. It was adopted by a vote of 65,709 in its favor, and 40,364 against it. The route was named the "Dix-Waterloo highway," but subsequently renamed "Vernor highway." It extended for many miles through the more southerly section of the city. The larger portion of it followed old and well-established streets, many of which were widened. In some instances, however, the extension of the highway required the taking of entire parcels of property by condemnation proceedings. In the present case, we are only concerned with a small portion of the highway. Woodward avenue, running north and south, is regarded as the dividing line between the east and west sides of the city. High street, running east and west, skirts the more congested downtown business section. The highway running in a westerly direction was routed along High street, west, which extended from Woodward avenue to Vermont avenue. Sufficient property was condemned between Vermont avenue and Fourteenth avenue so as to continue the highway in a straight line to Fourteenth avenue. Then, according to the original plan in the condemnation proceedings, the highway turned

south for a short distance through a broad open space, then turned west for two blocks along Michigan avenue to Sixteenth street, then turned south on Sixteenth street, and after proceeding through and beyond the viaduct over the Michigan Central Railroad tracks, it turned west again and continued for many miles. Roosevelt park is bounded on the north by Michigan avenue, on the south by the esplanade in front of the large Michigan Central Railroad station, on the east by Fourteenth avenue, and on the west by Sixteenth street. According to the original plan adopted in the condemnation and subsequent assessment proceedings, that part of Michigan avenue and Sixteenth street abutting the park became part of the highway.

The condemnation proceedings, instituted in the recorder's court for the city of Detroit, resulted in a very large award for damages. The city agreed to pay $2,278,200.19, one-half of the award, and a like amount for the other one-half was assessed against the property benefited by and fronting on the highway. After many hearings and a careful survey, the assessments were regularly determined by the board of assessors in the year 1927, and the assessment roll was confirmed by the common council of the city of Detroit.

In 1927, plaintiff, Frischkorn Investment Company, a Michigan corporation, acquired by purchase a large number of improved pieces or parcels of property fronting on Michigan avenue and in the assessment district. The property, consisting of 21½ lots, is in the vicinity of the intersection of Michigan avenue and Fourteenth avenue. Michigan avenue runs at an angle with Vernor highway and intersects it at Fourteenth avenue so that the rear of some of plaintiff's properties abut on Vernor high-

way, some are very close to it, while others would have fronted on Vernor highway had it been routed along Michigan avenue between Fourteenth avenue and Sixteenth street, according to the original plan. The assessment districts were divided into zones or districts, each of which was assessed at a different rate, and according to the benefits it was believed would be derived from the improvement. The assessments were especially heavy in the vicinity of the intersection of Michigan and Fourteenth avenues. Such Michigan avenue lots as also acquired Vernor highway frontage in the rear, were assessed at 35 per cent. This was a much higher rate than in the other places on account of frontages on two of the main thoroughfares of the city. Michigan avenue frontage facing the north side of Roosevelt park also was assessed at a high rate because of the added advantage of facing this important new highway. The assessments were made on the basis of frontage on Vernor highway. A higher percentage was assessed on the first 100-foot depth of the lots, and a lower one on any depth in excess of 100 feet. At the northwest corner of Sixteenth street and Michigan avenue, where the highway as planned turned south, three corner lots having a width of 100 feet on Michigan avenue were assessed on account of the "corner influence" of Vernor highway. Although these three lots, strictly speaking, did not front on the highway, as contemplated, nevertheless the southeast corner of these 100 feet would have touched the highway had it turned south at the intersection of Michigan avenue and Sixteenth streets, in accordance with the original plans. Plaintiff appeared before the assessors and the common council, acting as a board of review. There was neither fraud nor discrimination in the manner in which the assessments were

made. The trial judge dismissed the bill of complaint filed by plaintiff, in which it claimed constructive fraud, illegality, lack of benefits, and discrimination in the making of the assessments. The court did set aside the assessments on the lots on the northwest corner of Michigan avenue and Sixteenth street.

Plaintiff contends, on appeal, that the improvement has been a detriment instead of a benefit to its property. It asserts that the sole purpose of the highway was to enable traffic to speed rapidly past plaintiff's property; that it was exclusively for the benefit of the city at large and not of the individual property owners. It offered testimony to show that business has not increased in volume, but, on the contrary, it has decreased in the two years subsequent to the building of the highway.

Assessments for improvements must be made in accordance with the benefits, and it is difficult to discern in advance with any degree of exactitude the resulting benefits to abutting property owners. It can be readily seen that there may be some benefits through the widening of a narrow street with old buildings that must compete with new buildings on broad streets in the near neighborhood. Property may be benefited through the construction of new streets that afford quicker and better approaches. It is, however, claimed with much force that the widening of streets so that more cars may be accommodated and they may be speeded past the abutting property is a distinct disadvantage to the owners of homes or business along such highways, and that heavy assessments for this purpose amount to taxation without benefits and are confiscatory. The argument has been advanced that the widening of streets to accommodate vehicular traffic fre-

quently impairs values, discourages prospective customers from the opposite side of streets from crossing on account, of its obvious difficulties and dangers, brings noise, dirt, and gasoline odors to homes abutting the street, imposes a burden of taxation that cannot be met by owners of abutting property, and is a distinct detriment instead of a benefit to them. We are not unmindful of the fact that the public records for many years show that assessments for street widenings and openings in the city of Detroit, amounting to very many millions of dollars, remain unpaid. All these claims should appeal most strongly to the legislative authorities. The courts are loath to interfere unless fraud, discrimination, mistake, or the absence of the benefits claimed appear with certainty.

Plaintiff purchased the property after the completion of the condemnation proceedings, and prior to the improvement being made. It must have known that assessments would follow. The fact that several years later business on the streets had deteriorated may be entirely due to general business conditions. The benefits of the improvement are not guaranteed by the municipality. If it acts in good faith, has good reason to believe that benefits will accrue, and there is no showing of fraud, mistake, or illegality, the courts may not substitute their judgment for that of legislative bodies. *Goodrich v. City of Detroit,* 123 Mich. 559, 563. As was stated in the syllabus in *Marks v. City of Detroit,* 246 Mich. 517:

"To what extent adjoining property is enhanced in value by the widening of a street is left to the judgment of the common council and board of assessors under the Detroit city charter, and, in the absence of fraud, bad faith, or the following of

a plan incapable of producing equality, their judgment is conclusive.''

In this same case, Mr. Justice McDONALD, speaking for the court, quoted from *Brown* v. *City of Grand Rapids*, 83 Mich. 101:

"It is not for this court to set its judgment up in opposition to that of the board of commissioners and the council, and to say that this parcel of land or that is assessed too much or too little. The assessments were to be made according to benefits to each parcel of property, and there is nothing in the record showing that the commissioners did not assess the complainant's land in accordance with their best judgments.''

There is no showing that the board of assessors and the common council either knew or had good reason to believe that the effects of the widening would not benefit the owners of property abutting the improvement, if such be the case. For this reason we must hold that the assessments are valid and cannot be set aside, except where obvious mistakes have been made.

Plaintiff owns lots 11 and 12 of the Peter Godfrey Farm, Private Claim 726. It has a frontage on the north side of Michigan avenue and on the west side of Wabash avenue. The rear of these lots does not abut on Vernor highway, but on a public alley 20 feet in width, which, as far as the record shows, has never been condemned. North of this alley at the southwest corner of Vernor highway and Wabash avenue, there is a small triangular piece of property belonging to the city. It has a frontage of 39.87 feet along Vernor highway, 16.40 feet on Wabash avenue, and a width of 42.12 feet along the alley. This lot is a remnant of a former lot, and was obtained by the

city by excess condemnation. It became the absolute property of the defendant, and may be used or disposed of in proper manner. See *In re State Highway Commissioner,* 256 Mich. 165. While the triangular piece of property is not large, it, together with the alley, constitutes a barrier between the south line of Vernor highway and the north line of lots 11 and 12 of Godfrey Farm, Private Claim 726. These two lots have no Vernor highway frontage. The city retained a valuable parcel of property on the highway. It should pay for the benefits. The exhibits furnished on the condemnation and assessment proceedings did not show either this alley or the portion of the lot retained by the city. This was undoubtedly due to a mistake. Plaintiff should be relieved of the assessment on lots 11 and 12, Godfrey Farm, Private Claim 726. See *Panfil* v. *City of Detroit,* 246 Mich. 149.

When Vernor highway was laid out and assessments made, it was on the theory that it would proceed west along Michigan avenue, between Fourteenth avenue and Sixteenth street, and then south down the latter street. Thus plaintiff would have had the advantage of having its lots front on Vernor highway. The assessments were made on the basis of frontage on Vernor highway. Plaintiff's lots 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 of Private Claim 44, of the LaFontaine Farm, lying on the north side of Michigan avenue and between Fourteenth avenue and Sixteenth street, and fronting on that part of Michigan avenue along which Vernor highway was to be routed, were not affected by the improvement, for Vernor highway was re-routed so that these lots do not abut on it. After reaching Fourteenth avenue, the course of the highway, instead of going westerly

along Michigan avenue and then southerly on Six-
teenth street, as originally planned, was re-routed
so as to go diagonally through Roosevelt park. Two
roadways, one for easterly and the other for west-
erly traffic, run through the park from the intersec-
tion of Michigan avenue and Fourteenth avenue, to
Sixteenth street at the westerly side of the Michigan
Central station. The trial judge correctly said:

"In consideration of the above, I will simply say
that this assessment was levied upon the theory that
the route of this Vernor highway would be such that
the properties of these plaintiffs on the north side
of Michigan avenue was assessed as frontage upon
the improvement.

"Now, it transpires that when the improvement
was actually completed and opened up for travel and
put in use, the travel was routed across Roosevelt
park—that is—from Fourteenth street and Michigan
southwesterly through what is known as Roosevelt
park to a point a little south of Rose street in a
southwesterly direction through the viaduct, and the
testimony does not indicate there was any improve-
ment of Michigan avenue between Fourteenth and
Sixteenth streets. At least, not on the north side
of the street, and the only change made anywhere in
that vicinity, as I recall, is at the junction of Six-
teenth street and Michigan, and that was on the
south side of Michigan on the east side of Sixteenth
street, where the corner of the walk was rounded
to some extent. That is, that Michigan and Six-
teenth at that junction were widened."

We entirely agree with counsel for defendant in
his contention that the city may re-route, close, or
change the course of a highway that does not abut
plaintiff's property, but only may make it less
accessible to approach. Mr. Justice WIEST, speak-
ing for the court, stated the rule in *Tomazewski* v.
*Palmer Bee Co.*, 223 Mich. 565, as follows:

"The question of eminent domain is not involved. By no stretch of imagination can it be said that property rights of plaintiffs are taken. Mere inconvenience in having to go around the east half of the block next south, instead of through it, constitutes no taking of the property of plaintiffs. It is a well-settled rule that a lot owner's right to object to the vacation of a part of a street depends upon whether his lot abuts upon or comes in actual contact with the vacated portion, or access to his lots is entirely or materially cut off by reason of the vacation. That he may be inconvenienced or that he may have to go a more round-about way to reach certain points does not bring to him any injury different in kind from the general public but only in degree. If means of ingress and egress are not cut off or lessened in the block of the abutting owner but only rendered less convenient because of being less direct to other points in the city and made so by the vacation of the street in another block, such consequence is *damnum absque injuria.*"

The difficulty in the present case, however, is that Vernor highway, except on paper, was not routed along Michigan avenue between Fourteenth avenue and Sixteenth street. It was not a benefit that plaintiff acquired and kept for a time and then lost in subsequent years. It never had it at any time, for Vernor highway was routed through Roosevelt park. Inasmuch as the assessment was based on the frontage of the new highway and not on indirect benefits that might accrue to all of the neighboring property, it should be set aside as property which did not share in the benefits according to the standard adopted in measuring them. It would be inequitable to assess this property on the basis of frontage on Vernor highway when the improvements never touched these lots. The assessments as to lots 13,

14, 15, of Private Claim 44, LaFontaine Farm, were set aside by the trial judge. Defendant did not appeal from this decision. The assessments against lots 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 of the same subdivision, and those against lots 11 and 12 of the Peter Godfrey Farm, Private Claim 726, are also set aside. Those on the other lots described in the bill of complaint will not be disturbed. A decree will be entered, as thus modified, by the lower court. Plaintiff will recover costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, and NORTH, JJ., concurred with BUTZEL, J. WIEST, J., concurred in the result. FEAD, J., did not sit.