BRILL *v.* CITY OF GRAND RAPIDS.

1. TAXATION—SPECIAL ASSESSMENT—ROAD WIDENING—RESIDENTIAL PROPERTY—BENEFITS.

A special assessment on residential property adjacent to a 22-foot-wide blacktopped county road in a comparatively quiet residential area so that the width of the street could be doubled and thus could handle fast and heavy through motor traffic was unjustified where evidence showed that the widening had increased traffic in the street, had increased the noise, had made the street less safe for children and adults, had made use of private driveways into the street more dangerous, and had thus reduced the value of residential property on the street.

2. TAXATION—SPECIAL ASSESSMENT—RESIDENTIAL PROPERTY—ROAD WIDENING—BENEFIT—COLLEGE PROPERTY—TESTIMONY.

Special assessments on residential property for widening a road are unjustified where there is no benefit conferred on the properties, but whether college campus property on the street which is zoned residential comes under this rule can only be determined by the taking of sufficient testimony disclosing the status of the college property for purpose of the special assessment.

Appeal from Court of Appeals, Division 3, Burns, P. J., and Quinn and Ziem, JJ., affirming Kent, Fred N. Searl, J. Submitted January 15, 1970. (Calendar No. 11, Docket No. 52,123.) Decided March 9, 1970.

12 Mich App 297, reversed.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 48 Am Jur, Special or Local Assessments § 21 *et seq.*

Complaint by Robert H. Brill and others against the City of Grand Rapids, a municipal corporation, and Simon J. DeBoer, treasurer of the City of Grand Rapids, for an injunction against a special assessment levied against plaintiff's property. Judgment for defendants. Plaintiffs appealed to the Court of Appeals. Affirmed. Plaintiffs appeal. Reversed and remanded.

*Warner, Norcross & Judd (J. M. Neath, Jr., George L. Whitfield* and *R. Malcolm Cummings,* of counsel), for plaintiffs.

*Hillman, Baxter & Hammond* and *Rhoades, McKee & Boer,* for defendants.

PER CURIAM. A decade ago this Court reported unanimously its theretofore carefully considered opinion of *Fluckey* v. *City of Plymouth* (Jan. 4, 1960), 358 Mich 447. By purposeful design that opinion set forth at length specific passages of an unusually able analysis which, for the case, had been prepared by the Honorable Victor J. Baum, of the third circuit. It was thought at the time that Judge Baum's decision, and ours in turn, would provide a firm precedent for holding that the pavement-widening to double-width of what theretofore had been a comparatively quiet residential street, the salient purpose of the improvement being that of providing for fast and heavy through motor traffic, conferred no benefit upon the adjacent residential properties sufficient to justify the special assessment thereof.

The *Fluckey* case, however, was not accepted for application to this *Brill* case, either in circuit or on appellate review. See *Brill* v. *City of Grand Rapids* (1968), 12 Mich App 297. *Fluckey* cannot be dis-

tinguished presently, save only by observing that the instant no-benefit proof is stronger if anything than that shown in *Fluckey*. We therefore reverse on the main issue,[1] adding only additional factual reasons, not shown in *Fluckey*, for upholding the complaint of these residential owners as against the defendant city's claim of right to specially assess their property for benefits allegedly bestowed by this highway widening improvement.

The essential facts established by the present plaintiffs are so near duplicative of those adduced before Judge Baum as to justify application thereto of specific portions of his opinion. Such portions are quoted from *Fluckey* at 451, 452:

"It seems to me that no reasonable person or body could have concluded that the conversion of a 2-lane rural blacktop road, in a high-class residential district, to a 4-lane concrete highway would result in a net benefit to the residential properties abutting it. The east side of Sheldon is zoned 'R-1.' The homesites there constitute very high-grade residential properties. These improved homesites were worth $12,500 to $35,000 when the project was undertaken. Along with the testimony, a view of the project site confirmed to me that many of the parcels are in the $20,000 to $30,000 class. There are young children in the families of many of the residents. It was patent at the outset that the widening and paving project would diminish rather than enhance the value of the residential property. The project would make possible traffic of a tonnage much heavier than that which could use Sheldon road prior to the improvement. The widening from 2 lanes to 4 lanes was an invitation to a greater volume of traffic which couldn't possibly result in any benefit to residential

---

[1] The secondary issue questions the corresponding special assessment of the Calvin College property, situated on the same street (Burton). We shall come presently to that issue.

properties abutting on this road, however much business properties might be benefited." \* \* \*

"It is clear from this testimony that there was a feeling on the part of the commission that any road improvement automatically carries with it special benefit. This was the thrust of the testimony of many of the commissioners. This was also the gist of testimony on the part of a number of other witnesses for the defendants. This idea that road improvements automatically carry with them special benefits to abutting property may have been true once, before communities had installed on a widespread basis impervious road surfaces which could be used easily by automobiles. It was probably safe to say that every time such a surface was installed on a right-of-way, for the first time, the adjacent owners were specially benefited.

"A simple equation of cost and benefit may not have been irrational in those days at the advent of the auto age. But, the order changed. Original paving of a dirt road without any change in its width of, say, 20 feet, may be clearly of special benefit to abutting owners. One cannot say the same about the widening of a road in a residential district and its repavement when the pre-existing impervious hard surface was amply adequate for abutting owners. Our communities, our way of life, have grown and become more complex. Under zoning and deed restrictions, residential islands have evolved."

Reading through a record of more than 1,000 printed pages, it is not difficult to perceive what since *Fluckey* has happened to Grand Rapids' Burton street and the residences fronting on that street. Prior to this two-and-a-half-mile long pavement-widening project Burton was a county road, blacktop paved to a width of 22 feet, with gravel or dirt shoulders and conventional roadside drainage ditches on both sides. In general the street served locally

an excellent residential district, and there was no
through or heavy traffic. Now it is paved to a width
of 44 feet. The ditches have disappeared in favor
of underground drainage of the new highway. Curb-
ing has been installed. The homes of the plaintiffs
are that much closer to four lanes of traffic, rather
than two as before, and to the effect of such traffic
upon home life. Now the street is one of the major
connectors of Grand Rapids' East Belt Line highway
with the inner city, and now it bears much heavier
traffic of a "through" nature.

The proof offered by the plaintiffs shows beyond
fair dispute the overall nature of the harm done resi-
dential living by the project. In and along this reach
of Burton the four-lane thoroughfare has become a
"major street", a "traffic generator", and a "glorified
drag strip." In general, the project has made of the
street a less safe place to live, both for children and
adults, and has made motoring entry and departure,
to and from one's residential driveway, a hazard that
did not exist before.

Now Burton carries for longer hours each day the
mentioned heavier and faster motor traffic and the
widening thereof has eliminated the former reason-
ably safe shoulder parking by the adjacent residents.
Shown by witness after witness with no reason for
doubt of their testimony, it has increased the volume
of that annoying noise heavy motor traffic is bound
to generate. To say that all this does not amount to
proof of no benefit is to deny reality. To say that
the effect is that of increasing the actual value of
homes constructed along the way is to stretch credu-
lity. Here the approved writing of Judge Baum,
for the *Fluckey* case, applies with specific force.

Admittedly—by hindsight—the plaintiff homeown-
ers have erred. Their error consists solely of having
innocently built or bought good residences on a quiet

residential street devoted mainly to local traffic, typical pedestrian use, street-side parking, the leisurely delivery of milk, laundry, and newspapers, and provision of other services afforded by motor, only to find now that their homes were built too close to a new major way and to a new noise problem, all of which is bound to impair livability and decrease the intrinsic value of their homes. Superimposed upon all this is a new risk of personal safety in the operation of one's automobile.

The most significant factor of day-to-day detriment shown by the testimony and photographic exhibits is the plight of those homeowners whose homes are too close, as of today, to the new thoroughfare. These homes cannot be moved back, excepting at expense much greater than the amount of the special exactions the defendant city would impose. The photographs show that in most instances there is no room for construction of "wyes", so that a motorcar may be turned around between garage and street for entry upon the new pavement. Nor is there a road shoulder now, on which to pause before backing farther out, as might have been done formerly. The fact is, and this we judicially notice, that there can be some risk of damage or injury involved when one attempts to back out of his private driveway into a typically trafficked four-lane highway, yet a majority of these plaintiffs must on occasion run such a risk or abandon for a time their legal right of entry. That fact tends understandably to depress the pleasure of home life in such an area and, hence, the value of that one's home.

Division III did not attempt to distinguish *Fluckey*. The circuit judge dismissed that case with observation that there "the real purpose of the improvement was determined to be the furnishing of an adequate road to a new industry." Assuming but

not deciding that to be so, we find that the "real purpose" of this much longer pavement-widening project was to make a major 4-lane street of Burton by connecting it, at the easterly end, with combined north-south State trunklines M–21 and M–44.[2] We perceive no difference between the "real purpose" of each improvement, sufficient to distinguish the *Fluckey* case.

*Fluckey* is applied here, along with its next-in-line counterpart, *Knott* v. *City of Flint* (1961), 363 Mich 483, 489. As for *Eilender* v. *City of Pontiac* (1963), 371 Mich 671, relied upon by the circuit judge, it is sufficient to say that the action there was brought on the law side of the court to recover special assessments paid under protest, and therefore could not be heard and decided *de novo,* as in *Fluckey* and *Knott.* The Eilenders' action was tried to a jury and resulted in a verdict that the new highway constructed there conferred "additional benefit upon the property of the plaintiffs" and that it did "increase the value of the plaintiffs' land in an amount at least equal to the sum paid by them as special assessment." *Fluckey* accordingly was distinguished (pp 673, 674, 675). We need but add that the Eilender property, consisting of some 14 acres, was primarily of commercial nature and so did not come within the purpose or import of the *Fluckey* case.

The second question is whether the Calvin College campus, which extends some little distance along Burton street and was correspondingly assessed for benefits, "should be considered residential property for purposes of the issues presented." The trial judge concluded that "Calvin College is zoned A residential and is to be treated in the same manner as other residential property."

---

[2] At their intersection with Burton the two trunklines constituted Grand Rapids' East Belt Line Highway.

This question has received but casual treatment in the briefs and does not appear to have been developed sufficiently by testimony disclosing the status of the college property for purposes of special assessment. Since the *Fluckey* case applies only to the special assessment of residential property, and there being an obvious question, despite the mentioned residential zoning, whether the campus property comes within the scope of *Fluckey's* rule, we have decided to remand the cause so far as it affects plaintiff Calvin College for the taking of additional testimony and for a new determination of the rights if any of Calvin College.

Reversed and remanded for entry of judgment granting the plaintiff homeowners relief as sought by them. Vacated as to the issue of special assessment of the Calvin College property and remanded for further proof upon and a new determination of that issue. Costs of all courts to the plaintiff homeowners.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, BLACK, T. M. KAVANAGH, ADAMS, and T. G. KAVANAGH, JJ., concurred.