CUSUMANO *v.* CITY OF DETROIT

1. MUNICIPAL  CORPORATIONS — SPECIAL  ASSESSMENTS — LACHES — ESTOPPEL.

   One cannot stand idly by in full knowledge that a benefit is to be conferred upon him by a special assessment and, only after receiving the benefit, assert irregularities to relieve him of the cost of the special assessment; however, this rule has no application where the issue is whether those specially assessed have in fact received a benefit.

---

REFERENCE FOR POINTS IN HEADNOTES
[1–6] 38 Am Jur, Municipal Corporations §§ 381–394.

2. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENT—BASIS.

A special assessment is made upon the assumption that a portion of the community is to be specially and peculiarly benefited in the enhancement of the value of property peculiarly situated as regards the contemplated expenditure of public funds; the property of the persons who are to pay the special assessment must increase in value by an amount at least equal to the sum they are required to pay.

3. MUNICIPAL CORPORATIONS — SPECIAL ASSESSMENT — BENEFIT TO THOSE ASSESSED.

A court in a proper case must make an after-the-fact determination whether an alleged benefit conferred by a special assessment is a benefit to those specially assessed over and above the benefit conferred on the general public, because the basis of a special assessment is that those assessed receive a special benefit.

4. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—ROAD WIDENING—BENEFIT TO THOSE ASSESSED—EVIDENCE.

Finding that the paving of a blacktopped or gravel street and widening it from two to four lanes, for which the adjacent landowners were subjected to a special assessment, did not benefit the adjacent residential landowners and, in fact, was detrimental to them was supported by the record where the evidence showed that before the paving the area was quiet, pleasant, and semi-rural, despite its location within the city, but that after the paving and widening traffic became extremely heavy, the avenue became a gathering place for drag racers and motorcyclists, the residents claimed they were unable to sleep because of the noise of racing engines, squealing tires and inadequately muffled motorcycles and automobiles, property damage by vandals increased and injuries to health and consequent medical expenses were reported and that before the paving, the road was adequate for access by residents of the area.

5. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—ENHANCEMENT IN VALUE—RESIDENTIAL PROPERTY—COMMERCIAL PROPERTY.

A holding that widening the pavement of a quiet residential street to provide for fast and heavy through motor traffic does not confer a benefit on adjacent residential property sufficient to justify a special assessment applies only to residential property; commercial property may be specially assessed where nearby residential property may not, but upon proper proof

an owner of business property may establish that his property did not benefit.

6. MUNICIPAL CORPORATIONS — SPECIAL ASSESSMENT — RESIDENTIAL PROPERTY — COMMERCIAL PROPERTY — BENEFITS — PROOFS.

Further proof was necessary in a special assessment case even though the special assessment was unjustified as to residential property because no benefit was conferred on the residential property where the assessed property consisted of both commercial and residential property and the question of which were commercial and which were residential was not litigated, because different rules apply to the benefit necessary to be conferred on the two types of property.

Appeal from Wayne, Joseph A. Moynihan, Jr., J. Submitted Division 1 November 10, 1970, at Detroit. (Docket No. 8185.)   Decided February 17, 1971.

Complaint by Thomas Cusumano, H. J. Coykendall, Julia Breaux, Joseph Coletz, Isabelle A. Malzahn, Robert B. Dapling, and William J. Sweeney against the City of Detroit and Charles A. Williams, City Treasurer, for an injunction against a special assessment levied against plaintiffs' property and a determination that the assessment was void.   Judgment for plaintiffs.   Defendants appeal.   Remanded for the taking of further proofs.

*Metry, Metry, Sanom, Ashare & Goldman* (by *Dennis M. Matulewicz*), for plaintiffs.

*Michael M. Glusac,* Corporation Counsel, and *Julius C. Pliskow* and *Lawrence W. Morgan,* Assistants Corporation Counsel, for the defendants.

Before: McGREGOR, P. J., and HOLBROOK and O'HARA,* JJ.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

O'HARA, J. This is a special assessment case. Plaintiffs in the court below addressed their plea to the plenary power of the chancellor. They sought an order restraining the city from collecting the special assessment as to them. Additionally, they sought a judicial determination that the assessment was void. While it is true that in our state the procedural difference between actions at law and in equity are abolished, it is well recognized that the *substantive* differences are not. Indeed, GCR 1963, 203(1) recognizes the maintenance of the substantive distinction by mandating that "a complaint shall state * * * every claim either legal or equitable * * * ".

We note the distinction here so that it may be understood that in the case at bar we hear the appeal *de novo*. We address ourselves, as did the chancellor, to the equities as developed by the record.

Defendant City of Detroit is the taxing municipality. Plaintiffs are the owners of the property specially assessed.

Defendant city claims that the street on which plaintiffs' property abuts was never initially paved and that it was subject to intermittent flooding and excessive maintenance costs. It claims that the paving increased the value of the abutting property and conferred special benefits upon the owners in general.

Not so, say the plaintiff landowners. Not only is it their claim that no benefit was conferred, but indeed the paving inured to their detriment, lowered the value of their property, and prevented their prior peaceful enjoyment of their homes and places of business. We use the terms "homes" and "places of business" advisedly because the distinction becomes decisionally important.

The city adds an additional defense to the clearly fact issue as to benefit or detriment and claims that the landowners inequitably sat by and, with actual and constructive knowledge that improvements were impending, took no steps to restrain the city *before* the improvements were made.

We first consider the threshold question of laches or estoppel.  Defendant asserts, as before noted, that as plaintiffs were notified of the paving and special assessment well in advance of the fact and took no action until after the improvements had been completed, they should be barred from relief, citing *Gates* v. *City of Grand Rapids* (1903), 134 Mich 96; *Nowlen* v. *City of Benton Harbor* (1903), 134 Mich 401; and *W. F. Stewart Co.* v. *City of Flint* (1907), 147 Mich 697.  In each of these cases the plaintiffs sought to be relieved of a special assessment after the improvements had been rendered on grounds of procedural irregularities rather than substantive grounds.  In *W. F. Stewart,* where the plaintiffs asserted both procedural irregularities and absence of special benefit, the Court treated the claims separately, citing delay as barring plaintiffs' claims of procedural irregularities only.  These cases stand for the proposition, whether termed laches, estoppel, or otherwise, that one cannot stand idly by in full knowledge that a benefit is to be conferred upon him and, only after receiving the benefit, assert irregularities to relieve him of the cost of the special assessment.  Clearly, this good rule can have no application where the issue is whether plaintiffs have in fact received a benefit.

Our Supreme Court spoke to the question in *Fluckey* v. *City of Plymouth* (1960), 358 Mich 447, 453, 454:

" 'The general levy of taxes is understood to exact contributions in return for the general benefits of

government, and it promises nothing to the persons taxed, beyond what may be anticipated from an administration of the laws for individual protection and the general public good. Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be specially and peculiarly benefited, in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and, in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it. The justice of demanding the special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of a public work, are at the same time to suffer no pecuniary loss thereby; their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay.' "

A proper application of *Fluckey*, therefore, requires a court to make an after-the-fact determination of whether the paving at issue is a benefit to abutting property owners over and above that conferred on the general public. If an action can only be brought before the fact, the holding in *Fluckey* is vitiated. We must, in preservation of the force of the *Fluckey* rule, reject defendant's plea in bar of the action. We now address ourselves to the substantive issue.

Plaintiffs adduced substantial testimony as to the condition of this residential area before and after the paving for which special assessment was levied. The portion of the street in question is Riverside Avenue. It runs from Alter Road to Lighthouse Recreation Park, formerly Lakewood Park, and is connected to the park by a bridge. Prior to the 1966 paving, it was a two-lane road which was lightly traveled. Plaintiffs' witnesses believed the

road to have been blacktop. Defendant's experts stated that it was not blacktop, but rather gravel which was frequently treated with oil for a firmer, harder consistency. The evidence indicates that in practical effect the distinction is insignificant. Before paving, the area was quiet, pleasant, and semi-rural in effect despite its location within the city. One of plaintiffs' witnesses described it as "like living up north". One of the plaintiffs (Cusumano) operated a small marina, tackle shop and grocery. Angle parking for this business was available on the shoulder of the road.

In 1966 the city paved the road and widened it to four lanes. Angle parking became impossible and parallel parking provided only half the former space. Plaintiffs' witnesses, mostly residents of the area, complained that the advent of the wider pavement substantially changed the character of the neighborhood for the worse. Traffic to and from the park became extremely heavy. The avenue has become a nocturnal gathering area for drag-racers and motorcyclists. Residents claim they are unable to sleep for the noise of racing engines, squealing tires, and inadequately muffled motorcycle and automobile exhaust systems. Property damage by vandals has been reported. Witnesses reported injuries to health and consequent medical expenses. Plaintiffs' further testimony tended to show that the old roadway was adequate for access by property owners, and that the benefits of the improvements accrued mainly to citizens desiring to use Lighthouse Recreation Park.

The total record supports the finding of the trial court that the plaintiffs have satisfied their burden of proof that the paving of Riverside did not specially and peculiarly benefit adjacent *residential* property over and above the benefit conferred on

the general public and, in fact, caused a detriment thereto.

We must now examine another pronouncement by our Supreme Court which, while it expressly and emphatically reaffirmed the *Fluckey* rule, made clear the limits of its application. We refer to *Brill* v. *City of Grand Rapids* (1970), 383 Mich 216. We quote from *Brill* (p 217):

"A decade ago this Court reported unanimously its theretofore carefully considered opinion of *Fluckey* v. *City of Plymouth* (1960), 358 Mich 447. By purposeful design that opinion set forth at length specific passages of an unusually able analysis which, for the case, had been prepared by the Honorable Victor J. Baum, of the third circuit. It was thought at the time that Judge Baum's decision, and ours in turn, would provide a firm precedent for holding that the pavement-widening to double-width of what theretofore had been a comparatively quiet residential street, the salient purpose of the improvement being that of providing for fast and heavy through motor traffic, conferred no benefit upon the adjacent residential properties sufficient to justify the special assessment thereof."

Despite this strong affirmation of the *Fluckey* rule in general, the Supreme Court added this significant, and in this case *controlling,* limiting language: "the *Fluckey* case applies *only* to the special assessment of residential property." (Emphasis supplied.)

In *Brill,* relief was granted only to the plaintiff homeowners while the case was remanded for further proofs as to Calvin College, a co-plaintiff and owner of adjacent *non-residential* property.

The clear import of *Brill* is that commercial property may be subject to special assessment where nearby residential property may not. This is, of course, not to be construed as a judicial holding

that upon proper proof an owner of business property cannot establish that the business property did not benefit from a special assessment.

It is manifest from the record in the instant case that some of the plaintiffs are owners of residential property, while others own commercial sites. The question of which property was commercial and which was residential was not specifically litigated below. We are unable, on the record before us, to determine this question with sufficient certitude to frame an order distinguishing among individual plaintiffs.

We, therefore, remand for the taking of further proofs to determine the applicability of the limiting language in *Brill,* and for findings of fact and decision pursuant thereto.

The cause is remanded to the trial court for further proceedings consistent with our opinion herein. No costs, neither party having prevailed in full.

All concurred.