TACK v CITY OF ROSEVILLE

1. APPEAL AND ERROR—EQUITY—DE NOVO REVIEW—FINDINGS OF FACT.

An appellate court reviewing an equity case *de novo* will not ordinarily disturb findings of fact unless the court concludes it would have arrived at a different result had it been in the position of the trial judge.

2. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—STREET IMPROVEMENTS—BENEFIT TO ABUTTING PROPERTY.

Municipal corporations may levy special assessments upon abutting property for the purpose of street improvement based upon the theory that a special benefit is conferred upon such property over and above the general benefit conferred upon the municipality as a whole.

3. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—STREET IMPROVEMENTS—BENEFIT TO ABUTTING PROPERTY—JUDICIAL REVIEW.

The legislative body imposing a special assessment for the purpose of street improvements is in the best position to determine whether a benefit is conferred upon the property so assessed and the amount of such benefit; courts are reluctant to interfere in this legislative determination unless there is fraud, mistake, discrimination, or the absence of the benefits claimed appears with certainty.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 822.
Advantage which the original trier of facts enjoyed over reviewing court from opportunity of seeing and hearing witnesses. 111 ALR 742.
[2] 70 Am Jur 2d, Special or Local Assessments §§ 109–111.
What property "abuts" on improvements so as to be subject to assessment. 97 ALR2d 1079.
[3] 70 Am Jur 2d, Special or Local Assessments §§ 18 *et seq.,* 107.
[4, 5] 70 Am Jur 2d, Special or Local Assessments § 35.
Widening of city streets as local improvement justifying special assessment of adjacent property. 46 ALR3d 127.
[6] 59 Am Jur 2d, Parties §§ 48, 81.

4. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—STREET IMPROVE-
    MENTS—BENEFIT TO ABUTTING PROPERTY—JUDICIAL REVIEW.

   The concept that road improvements, including street widening
   in particular, automatically result in special benefits to abut-
   ting properties, even when so determined by the legislative
   body imposing assessments, may be overturned where the
   record as a whole stretches credulity or shows beyond fair
   dispute that an overall harm results to the property owners
   assessed.

5. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—STREET IMPROVE-
    MENTS—BENEFIT TO ABUTTING PROPERTY—DETRIMENT TO ABUT-
    TING PROPERTY.

   Owners of property abutting a street were not specially benefited
   so as to justify the levy of a special assessment against the
   property when the street was widened from two lanes to five
   and curbs and storm sewers installed where the record indi-
   cates that the improvement was not made for the benefit of the
   abutting property owners but for the county as a whole, to
   eliminate a serious bottleneck in a major thoroughfare and to
   serve some commercial traffic generators in particular; the
   abutting property owners were no more benefited than were
   nonassessed taxpayers of the county and in addition incurred
   some detriments in that traffic was increased and was moved
   closer to their homes.

6. COURTS—JUDGE'S DISCRETION—CLASS ACTIONS—NOTICE TO ABSEN-
    TEE MEMBERS—APPEAL AND ERROR—COURT RULES.

   A court-ordered notice to absentee members of a class, in a suit
   brought by several members of the class, is left to the sound
   discretion of the court and is reversible on appeal only for an
   abuse of discretion; no abuse of discretion is shown where the
   plaintiffs' attorney sent notice by mail to all persons living
   within a district which was assessed for street improvements
   and where the assessment was the subject matter of the action
   (GCR 1963, 208.4).

Appeal from Macomb, Hunter D. Stair, J. Sub-
mitted December 3, 1975, at Detroit. (Docket No.
22395.) Decided January 26, 1976. Leave to appeal
denied, 397 Mich —.

Complaint by Dorothy Tack, Angelo Bommarito,
Thomas Bielak, Margaret Kitch, Paul J. Poleski,
John Bell, June Juliano, Raymon Durda, and Rob-
ert Nixon against the City of Roseville to enjoin

the city from levying an assessment to cover a portion of the cost of a street improvement project. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Oster, Bender & Thompson,* for plaintiffs.

*Peterson & Hay, P. C.,* for defendant.

Before: J. H. GILLIS, P. J., and ALLEN and M. J. KELLY, JJ.

ALLEN, J. Plaintiffs, property owners abutting Twelve Mile Road between Groesbeck Highway (M-97) on the west and Utica Road on the east in Macomb County, commenced a class action suit to enjoin the City of Roseville from levying a $4 per front foot assessment to cover a portion of the cost of a major street widening and installation of paving and curb project along Twelve Mile Road. From a judgment in favor of plaintiffs, defendant city appeals.

The questioned improvement, which was made in 1972, consisted of widening approximately 1-1/4 mile of Twelve Mile Road from its then two lanes (22 feet) to five lanes (58 feet), eliminating open ditches on each side of the road and installing curb. The new five lanes provided two east and two west travel lanes with a center refuge or left turn lane. Prior to the widening, this segment of Twelve Mile Road was a concrete two-lane roadway with 8-foot gravel shoulders and open ditches. The two lanes of concrete had been installed without assessment to the property owners in 1962 and, except for its narrow width, was in excellent traveling condition. The project was described as

the "missing link" and "bottleneck" stretch of Twelve Mile Road, since west of Groesbeck Highway (M-97) Twelve Mile Road was five lanes of concrete roadway, and east of Utica Road was four lanes of concrete roadway.

Zoning in the specially assessed area was predominantly single family residential with some apartment dwellings, a church, a Knights of Columbus hall and isolated small commercial establishments. Fifty percent of the approximately $630,000 project cost was paid by the Macomb County Road Commission. The remaining fifty percent was paid by the City of Roseville which assessed a portion thereof to the abutting property owners.[1] With minor exceptions the testimony was sharply conflicting. Plaintiffs testified the widened road caused increased traffic, increased car speeds, and noise and dust to the point that windows had to remain closed in the summertime, made ingress and egress to driveways and side streets more difficult, increased the hazards of crossing Twelve Mile Road for pedestrians and children, all of which reduced the quality of life and property values in the project area. Defendant countered, claiming the plaintiffs were specially benefited by elimination of the open ditches with their stagnant water, occasional flooding and breeding places for flies, and by esthetics from curbs, fresh paving and elimination of open ditches. Defendant placed in evidence traffic counts disclosing only a slight increase in traffic volume following the widening

---

[1] Assessments against abutting property owners were first computed on the equivalent installation of two lanes rather than five lanes of highway. The per foot cost thus arrived at was approximately $11. However, after reviewing the proposed assessment the City Council reduced the suggested $11 to $4 per foot and confirmed the roll accordingly.

of the road[2] from which defendant then argued that neither the noise, volume nor fumes were increased and that safety was actually enhanced because five lanes carrying approximately the same volume of cars would result in greater gaps between vehicles, thus making ingress and egress to driveways and turn-offs to abutting streets safer.

The cost of eliminating the open ditches was not charged to the project. It was paid for separately under a Chapter 20 program.[3] Extensive video tapes presenting conditions before and after the paving project were introduced in evidence and reviewed by this Court on appeal. The trial judge found that the primary beneficiary of the improved roadway was the motoring public and that no special benefit was conferred upon the property owners. The court further found that any benefits which resulted to the abutting property owners from the improvement in the drainage system was minimized because the cost of eliminating the open ditches was paid separately under a Chapter 20 program.

We begin our analysis by noting that the record discloses that approximately 10 percent of the traffic volume on Twelve Mile Road is produced by

---

[2] Traffic counts introduced in evidence by the Director of Safety for the Macomb County Road Commission showed the following before and after volumes of traffic per 24 hours:

| Before Improvement | | After Improvement | |
|---|---|---|---|
| 1965 | 14,000 | 1973 | 28,000 |
| 1967 | 18,000 | April 1974 | 26,344 |
| 1970 | 26,000 | | |

[3] Chapter 20 of the Drain Code, MCLA 280.461, *et seq.;* MSA 11.1461 *et seq.,* allows a drain district to be formed and benefits assessed. While the record is not clear as to the exact amount of the total drainage cost charged to the road improvement, it appears that the expenses of covering the open ditches was paid under Chapter 20 and the cost of the catch basins in the new roadway with the pipes or barrels leading laterally therefrom was charged to the project cost.

the residents of the area assessed and that the $4 per front foot assessment represents approximately 10 percent of defendant city's share of the improvement costs. Thus, prima facie, at least, there is some rational basis for the council's decision to assess at $4 per foot assuming that the widening project conferred upon the assessed area a special benefit over and above the general public benefit. Whether the disputed project conferred such a special benefit is the issue in this case. In deciding this issue we adopt by reference the standards of judicial review set forth by this Court in *Wabeke v City of Holland,* 54 Mich App 215, 219–221; 220 NW2d 756 (1974).[4]

---

[4] "1. Where the suit is brought in equity the record is reviewed *de novo.* However, an appellate court reviewing *de novo* will not ordinarily disturb findings of fact unless the court concludes it would have arrived at a different result had it been in the position of the trial judge. *In re Hartman Estate,* 51 Mich App 192, 203–204; 215 NW2d 202, 208 (1974).

"2. The power to levy a special assessment for street improvement purposes rests upon the benefit which the assessment confers on the abutting property and which benefit is different from general benefit conferred upon the community at large. 14 McQuillin, Municipal Corporations (3d Ed), § 38.02, p 18. Municipal corporations may levy special assessments based upon the theory that a special benefit over and above the general benefit conferred upon the municipality as a whole, is conferred upon such property. *Axtell v City of Portage,* [32 Mich App 491; 189 NW2d 99 (1971), *app dismissed,* 385 Mich 786 (1972)] *supra.*

"3. Whether there is no benefit at all, or the amount of benefit, is peculiarly a decision best made by the legislative body imposing the assessment. Courts are reluctant to interfere in this legislative determination unless there is fraud, mistake, discrimination or where the absence of the benefits claimed appears with certainty. *Frischkorn Investment Co v Detroit,* 257 Mich 546, 552; 241 NW 903 (1932).

"4. The concept that road improvements, including street widening in particular, automatically result in special benefits even when so determined by the legislative body, may be overturned where the record as a whole 'stretche[s] credulity' or 'shows beyond fair dispute' an overall harm to the property owners assessed, *Brill v Grand Rapids,* 383 Mich 216, 220; 174 NW2d 832 (1970). Pavement widenings to double the width of what theretofore had been a quiet residential street and the purpose of which was to provide for fast and heavy motor traffic and where the whole character of the street and neighborhood is changed are held as a matter of law to confer no special

We do not agree with plaintiffs that the present dispute is controlled by *Fluckey v City of Plymouth,* 358 Mich 447; 100 NW2d 486 (1960), or *Brill v Grand Rapids,* 383 Mich 216; 174 NW2d 832; 46 ALR3d 121 (1970). Though similar because they involved the conversion of a two-lane road into a multi-lane road those cases differ from the appeal before us since prior to its widening Twelve Mile Road could hardly be called a peaceful country road or quiet residential street—a factor upon which the court in the cited cases heavily relied in concluding no special benefit was conferred. Nor do we agree with defendant that the present situation is determined by *Wabeke, supra,* or *Axtell v City of Portage,* 32 Mich App 491; 189 NW2d 99 (1971), *app dismissed,* 385 Mich 786 (1972). In *Wabeke,* the street was widened a mere 6 feet, the existing surface was in poor condition, storm sewers were charged to the widening costs and the entire project was designed to maintain the residential character of the neighborhood. *Axtell,* similar in that the widening was from two lanes to four lanes with installation of curb and storm sewer, is distinguishable because the road involved dead-ended at one extremity and was incapable of becoming a major arterial road like Twelve Mile Road. To us, the instant case stands by itself somewhere between *Axtell* on the one hand and *Fluckey* and *Brill* on the other. Given this circumstance and applying the standards of judicial review set forth in footnote 4 above, was a special benefit conferred upon plaintiffs and the class they represent? We conclude no.

Video tapes, substantial portions of which were viewed by us, strikingly depict a general aesthetic

benefit. *Fluckey [v City of Plymouth,* 358 Mich 447; 100 NW2d 486 (1960)], *supra, Brill, supra."*

uplifting of the area through the elimination of the ditches along the sides of the roadway. To this extent plaintiffs were obviously specially benefited. But most of this improvement was separately funded in a Chapter 20 program and was not included in the $4 per front foot assessment. Therefore, the trial court was correct in not including this benefit as part of the assessment. Testimony at trial and the video tapes likewise evidence a material betterment of driving conditions following the project installation. Vehicular flow is smoother, somewhat faster and with less stop or slowdown on four lanes than on the previously existing two lanes. Wider radius at interconnecting streets provides easier right hand turns and ingress to connecting streets. For the same reason ingress to Twelve Mile Road from connecting streets is facilitated. Traffic which previously moved in long single lines on two lanes now moves in dual lanes thus allowing more frequent and wider gaps between cars. The added fifth refuge or left turn lane makes left turns easier and reduces the danger of rear end collisions. Clearly the widened highway was a benefit to the motoring public as a whole including the residents whose property was specially assessed.

But we do not perceive where the traffic and driving improvement more benefited or specially benefited those families who lived on Twelve Mile Road. Realistically, families whose residences lie on interior streets back of Twelve Mile Road and who were not specially assessed were more benefited than families living on the widened highway. Interior street families received the benefits of greater safety, less congestion and easier turning ingress and egress without the accompanying disadvantage of traffic moving closer to their homes.

Although we believe that plaintiffs exaggerated the detriments resulting to them from the project a careful examination of the record does disclose that along with the driving benefits shared in common with the general public, plaintiffs incurred some detriments. When three lanes are added to an existing street, traffic is brought much closer to the home. Even after allowing for the smoother flow of cars (which defendant claims reduces the stench from exhaust fumes) and the wider gaps in traffic (which defendant argues reduces or does not increase the total noise or vibration level) we find that the record convincingly supports most of plaintiffs' claim of detriments from greater noise, fumes and particularly the dangers which come to small children or to pedestrians who must cross the highway. Even Warren Anderson, respected consulting engineer and a principal witness for defendant, conceded upon cross examination that the widened street could be a detriment to abutting property owners. Our conclusion in this respect is recognized by recent case law.[5]

Where the property owner against whom the assessment is levied receives a new pavement replacing a well outworn street or one badly needing repair the courts have often found a special benefit. That element is lacking here. The testimony of all parties was that the two lane concrete surface of Twelve Mile Road installed in 1962 was in excellent condition, so good in fact that nothing was done with it in the widening project other than to cover it with a thin layer of asphalt surface to make it compatible with the added three lanes. The improvement was not made for the benefit of the abutting property owners but

---

[5] See Anno: *Widening of City Street as Local Improvement Justifying Special Assessment of Adjacent Property,* 46 ALR 3d 127, 135–136.

was designed to eliminate a serious bottleneck in Twelve Mile Road between Utica Road on the east and M-97 on the west. Unlike Kilgore Road in *Axtell, supra,* Twelve Mile Road was always a major east-west road. It serves such traffic generators as General Motors Tech Center, Tech Plaza Shopping Center and South Macomb Hospital. Although it was not the peaceful residential street found in *Fluckey* and *Brill,* its basic residential character was nonetheless diminished when its roadway was more than doubled. Defendant's evidence that plaintiffs' homes had increased in value more than the past year's increase in value of all other property in the city and that this increase was attributable to the street improvement was unconvincing.[6] Arguably there may have been some aesthetic improvement other than the elimination of the ditches but, if so, we find it *de minimus* and insufficient to overturn the findings of the trial court.

Reviewing the record as a whole and bearing in mind that courts are reluctant to interfere in the legislative determination of benefits *(Wabeke, supra,* at 220) we conclude that while plaintiffs were benefited by the closing of the ditches, there is no reasonable basis for the judgment of the local officials that as to the street widening plaintiffs were specially benefited.[7] The project's purpose

---

[6] The city assessor testified that between 1973 and 1974 the state equalized value for the city increased 11 percent but that residences on Twelve Mile Road along the assessed area increased approximately 14 percent. However, on cross-examination plaintiff effectively showed that representative homes on interior streets leading off of Twelve Mile Road also increased approximately 14 percent.

[7] For an excellent review of the standards of judicial review in street widening cases, *see* 20 Wayne Law Review 1073 (1974). While defendant contends that the trial court did not apply the correct standards in reaching the court's decision in the instant case, we find that the court was not substituting its judgment for the legislative body and that the court did follow the present case law.

was to accommodate the county as a whole and in particular to accommodate and serve the traffic generators adjacent to the highway. While plaintiffs benefited thereby they were no more benefited than nonassessed taxpayers of the county and in addition incurred some detriments resulting from the extensive nature of the widening project.

Finally, defendant claims the trial court erred in overruling objection to the adequacy of notice to the class as provided in GCR 1963, 208.4. Under this rule court-ordered notice to absentee members of the class is left to the sound discretion of the court and upon appeal is reversible only if it is found the trial judge abused his discretion. *Wendel v Swanberg,* 384 Mich 468; 185 NW2d 348 (1971). In the instant case plaintiffs' attorney sent notice by mail to all persons living within the district assessed. We find no abuse of discretion. We also reject defendant's contention that the trial court should have ordered notice concerning the binding effect of judgment and that failure to do so leaves the city subject to exposure to extensive litigation. Since all members of the class were notified of suit and since the court explained that members of the class could not claim ignorance of the litigation we fail to see how the city can be exposed to litigation by the absentee class members.

Affirmed, no costs, a public question being involved.