CITY OF LANSING *v.* JENISON.

1. EMINENT DOMAIN—MUNICIPAL CORPORATIONS—ALLEYS—VALIDITY OF CHARTER—PRACTICE.

In proceedings by the city of Lansing to condemn land for a public alley, it is not necessary for an abutting owner whose land is to be taken to wait until the assessment is levied before raising the question of the validity of the city charter under which the proceedings are had.

2. SAME—LANSING CHARTER—CONSTRUCTION.

Where the proceedings for the condemnation of lands by the city of Lansing for alley purposes, and the assessment to be made to pay therefor, are prescribed by the charter of the city in specific language, such provisions control rather than general provisions found in another section

having reference to streets, sewers, and alleys, since when the council acts it must act in accordance with the charter, and the specific provisions in reference thereto must control.

3. TAXATION—PERMANENT IMPROVEMENTS — SPECIAL ASSESSMENTS —BENEFITS.

Special assessments may be sustained only upon the theory that the property assessed receives some special benefit from the improvement differing from the benefit to the general public.

4. EMINENT DOMAIN—ALLEYS—PUBLIC NECESSITY.

Under article 13, § 1, of the Constitution, private property may not be taken for the opening of a public alley except the public necessity therefor be found by the jury.

5. SAME—LANSING CHARTER—CONSTITUTIONAL LAW.

Section 188, chap. 13, of the charter of the city of Lansing, providing "If the proposed improvement shall be the opening, widening, altering, extending or vacating of an alley, the expense of taking private property therefor, including the cost of the proceedings, and the compensation and damages to be paid, and the first cost in making such alley serviceable for use, shall be defrayed by the lands and property abutting thereon, and in such case it shall be the duty of the city council, by resolution, to determine the amount which each piece of land shall bear," is unconstitutional, as it practically amounts to the taking of private property for a public use without compensation, in conflict with the 14th Amendment to the Federal Constitution.

Certiorari to Ingham; Collingwood, J. Submitted April 19, 1918. (Docket No. 15.) Decided June 3, 1918.

Condemnation proceedings in justice's court by the city of Lansing against Frederick C. Jenison, Sophie S. Turner and others to acquire certain land for a public alley. From an award of the jury determining the necessity and fixing the damages, defendant Turner appealed to the circuit court. Judgment quashing the proceedings as to defendant Turner. Plaintiff brings certiorari. Affirmed.

*Joseph H. Dunnebacke*, City Attorney, for appellant.

*Cummins & Nichols*, for appellee.

Fellows, J.   The city of Lansing, acting under the provisions of its charter, seeks in this proceeding to acquire certain property for a public alley on block 101, in that city.   Sophie S. Turner, an owner of a portion of the land sought to be condemned, contests the proceeding.   She insists that the provisions of the charter are invalid; that they conflict with the 14th amendment to the Federal Constitution; that they authorize the taking of private property for public use without compensation; and that the whole scheme of the provisions of the charter with reference to the opening of alleys contemplates and authorizes the confiscation of the private property of individual owners for a public use without compensation, and without due process of law.   It does not seem to be controverted that the proceedings taken conform to the requirements of the charter; but the argument is directed to the validity of the charter under which the proceedings are had.   The jury in justice's court found the necessity for taking and fixed the damages.   Upon appeal the circuit court sustained Mrs. Turner in her contention and quashed the proceedings as to her.   To review this action we allowed this writ of certiorari.

The validity of the charter provisions are properly raised in this proceeding.   It is not necessary that Mrs. Turner wait until the assessment is levied before raising the question.   She is not contesting the amount or validity of an assessment which may be levied upon her abutting property, but is questioning the right of the city to take from her the property in question.   Her objections are not prematurely made.

Under the chapter of the charter entitled "Taking Private Property For Public Use," being chapter 13, specific provision is made with reference to alleys, and

specific provision is made with reference to streets and sewers, and these provisions, which are found in section 188, are radically different. With reference to alleys it is provided:

"If the proposed improvement shall be the opening, widening, altering, extending or vacating of an alley, the expense of taking private property therefor, including the cost of the proceedings, and the compensation and damages to be paid, and the first cost in making such alley serviceable for use, shall be defrayed by the lands and property abutting thereon, and in such case it shall be the duty of the city council, by resolution, to determine the amount which each piece of land shall bear."

While with reference to streets and sewers the provision is as follows:

"If the proposed improvement shall be the opening, widening, altering, extending or vacating of a street or avenue, or the construction of any sewer, drain or ditch, the expense of taking private property therefor including the cost of the proceedings, and the compensation and damages, shall be defrayed in whole or in part as the council may determine, by the special assessment upon the lands and premises specially benefited by such improvement, in proportion to the special benefits accruing to each parcel. In such case it shall be the duty of the city council by resolution, to determine and describe a local tax district, which embraces all the lands and premises which, in the opinion of the council, shall be especially benefited. Such resolution shall prescribe the percentage of the expense aforesaid, to be defrayed by special assessment on the lands and premises in said tax district."

This radical difference it will be noted, lies in the fact that as to streets and sewers, assessments are levied upon the lands especially benefited, while as to alleys the entire costs must be arbitrarily levied upon the abutting owners by the city council, without requiring the council to consider the question of benefits as between such abutting owners, and at the same

time prohibiting the apportionment of any of such expense upon the public, no matter how great may be the public benefit as a result of the improvement.

But before considering the validity of the provision above quoted with reference to alleys we will consider the argument advanced by the city attorney, that all the provisions of the charter must be taken into consideration to obtain the proper construction of the section in question, and that other sections of the charter, when properly considered, relieve the provision from any question of unconstitutional taint. The argument is made that sections 202 and 250 eliminate this question from the case. We must consider the charter in its entirety, but it is quite doubtful if the general language found in other provisions can be substituted for the specific provisions here involved. In section 202 it is provided for the transmission to the council of certified copies of the proceedings in the condemnation case, and directs that:

"Thereupon the city council shall cause a special assessment to be made of the sum or sums awarded by the jury, and the expense of said proceedings in pursuance of, and in accordance with the said resolution of the city council hereinbefore mentioned."

Clearly this does not contemplate that the action of the city council shall be other than as directed and provided for in section 188. That section has already made provision for the apportionment of the assessment and there is nothing in this last quoted provision contemplating different action from that found in the former section. It is then provided:

"The assessment shall be made, and the amount levied and collected, in the same manner as is provided in this charter for other special assessments."

This must be taken as meaning no more than that the same machinery shall be used as for other special assessments, rather than that the specific provisions

found in section 188 are eliminated and other provisions which may be found in the charter substituted for them.

Much is claimed for section 250 of the charter. This section provides:

"Pursuant to the order of the city council the assessors shall make an assessment upon all lands within the portion of the city so designated, of the amount of expense, in case of construction of sewers and drains or of the opening of streets or alleys in proportion as nearly as may be to the benefits which each shall be deemed to acquire by the making of such improvement, and in case of grading, graveling, paving and all other street improvements, shall be according to foot frontage, and shall make out an assessment roll in which shall be entered the names of persons and the description of the property assessed, and the amount assessed to each person respectively; and in case any lots or parcels of real estate shall belong to a nonresident, or the owner or owners are unknown, the same shall be entered accordingly, with a description of such lots or premises, as is required by law in assessment rolls made by supervisors of townships, with the amount assessed thereon, which assessment roll, shall be subscribed by them and returned within two weeks to the city council unless such time be extended by resolution of said city council."

As already stated, it is quite doubtful if general language can be used to eliminate the specific language found in section 188 with reference to alleys, and the provision there found must be eliminated by something in the charter before we would be justified in overlooking its provisions. But by section 250, it appears that any assessment made by the assessors is tentative only, and by this and subsequent sections the final action on the assessment list is taken by the city council. When, therefore, the city council acts, it acts in accordance with the provisions of the charter; if the special assessment be one for streets or sewers, the provisions with reference to streets and sewers

control; if with reference to alleys, the provisions with reference to alleys measure its power. While this provision of the charter in general language makes provision for the making of a tentative assessment the provisions of section 188, under which the city council gets its authority, in specific language limits the levy of the assessment for the cost of the alley to the abutting property, irrespective of how much the public is benefited by it, and permits an arbitrary apportionment of it upon such property irrespective of benefits.

We are constrained to hold that these provisions to which our attention has been directed by the learned city attorney cannot supersede the specific provisions found in the charter having application alone to alleys. The proceedings for the condemnation of lands for opening alleys, and the assessment to be made to pay therefor, are prescribed by the charter in specific language. The whole machinery is provided for and the manner and method to be used to accomplish the end are set forth in specific terms. The proceedings there provided for must be the foundation upon which the condemnation of defendant's land must stand or fall. It is per force of the authority there granted the city council that this case was started, and, unless such authority has been validly granted to the city council, defendant may not be required to surrender her property, even for a public use.

It is the settled law that special assessments may be sustained upon the theory that the property assessed receives some special benefit from the improvement differing from the benefit that the general public enjoy. This is the foundation of the right to levy special assessments, and without such foundation the right must fail. That the private property of the citizen may not be taken for the opening of a public alley, except the necessity therefor—the public necessity—be

201—Mich.—32.

found by the jury is settled by the Constitution of the State (art. 13, § 1). That the public have valuable rights in the alleys of the State, the recent decisions of this court in *Village of Manchester* v. *Clarkson,* 195 Mich. 354, and *Edison Illuminating Co.* v. *Misch,* 200 Mich. 114, point out. When, therefore, the act under which the alley opening is authorized not only permits the assessment to be made, without considering the question of benefits to abutting property, but also prohibits any assessment upon the public at large, irrespective of how much it may be benefited, such act does not square with constitutional requirements. *City of Detroit* v. *Judge of Recorder's Court,* 112 Mich. 588. In this case this court had under consideration an act which required the assessment of at least one-half of the amount awarded as compensation upon the district fixed by the common council. It was held that the act was unconstitutional, Mr. Justice GRANT, speaking for the court, saying:

"The legislature has no power to fix an arbitrary percentage of a public improvement to be imposed upon a local assessment district, regardless of the benefits received."

This case controls the instant case, unless we overrule it, which, in effect, we are asked to do. It is pointed out by counsel that the tendency of the court of last resort of the Nation has been to relax and modify the holding of that court in *Norwood* v. *Baker,* 172 U. S. 269, 281, and many cases which have that tendency have been called to our attention. Counsel has been most diligent and painstaking in his research. We have examined all the cases cited by him, and agree with him that the *Norwood Case* is now of quite doubtful authority. But this court did not base its holding in the *Detroit Case* on the *Norwood Case;* indeed, the *Detroit Case* was decided before the *Norwood Case.* The *Detroit Case* was a condemnation case and in-

volved a statute of the State and its validity under the State Constitution. It was not necessary in that case, nor is it in this case, to determine any Federal question. Neither in that case or in the instant case was it, or is it, necessary to determine the question of whether due process was or is provided for. Even though the act there and the charter here provide due process, still that act failed and the charter here must fail, if by the provisions there and here private property of the individual was or is taken for a public use without compensation. This infirmity is more marked in the provision here under consideration than it was in that case. Here the whole scheme of the charter contemplates the taking of the private property of the individual for a public use and by an arbitrary, unbending, unyielding, requirement of the charter compels payment by the abutting owners, not only of the damages for such taking, but also the expense of the proceeding, together with the first cost of making it serviceable for use. In its practical application it takes private property from a set of individuals for a public use and then requires the same set of individuals to pay, not only the damages awarded them but also the expenses, together with the cost of making the property serviceable for public use. It would be difficult to imagine a more patent case of taking private property for a public use without compensation than the one now before us. We have no disposition to overrule the *Detroit Case.* It was correctly decided.

The judgment of the circuit court dismissing the proceedings as to Mrs. Turner must be affirmed.

BIRD, MOORE, STEERE; BROOKE, STONE, and KUHN, JJ., concurred. OSTRANDER, C. J., did not sit.