## JOHNSON v CITY OF INKSTER

Docket No. 56632. Argued April 6, 1976 (Calendar No. 12).—Decided
October 6, 1977.

Plaintiff Willie Johnson, as representative of a class of residential
property owners who were specially assessed by the City of
Inkster to pay part of the cost of widening a portion of Middle-
belt Road, brought an action to enjoin collection of the special
assessment. Special Assessment District No. 169 was created by
the city containing non-abutting property extending approxi-
mately 1500 feet to either side of Middlebelt on residential
streets having an outlet to the widened road. Plaintiffs chal-
lenged the methods used to compute the assessment, and
alleged that the assessment violated the Inkster City Charter
and special assessment ordinance. The Wayne Circuit Court,
James Montante, J., granted judgment for defendants City of
Inkster and Bruce Cook, ·its Treasurer. The Court of Appeals,
J. H. Gillis, P. J., and Allen and Peterson, JJ., affirmed (Docket
No. 16884). Plaintiff appeals. *Held:*

1. The theory of a special assessment for a public improve-
ment is that a special benefit has been conferred, over and
above that conferred upon the community itself. The principle
that persons who are made to bear the cost of a public work
are at the same time to suffer no pecuniary loss thereby does
not accommodate an assessment to defray the cost of rectifying
conditions mainly brought about by the public at large and not
specially and peculiarly related to the use or needs of persons
residing in the assessment district.

2. Where an existing road is adequate for the use of local

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 8–10] 70 Am Jur 2d, Special or Local Assessments § 18 *et seq.*
[2, 4, 10–12] 70 Am Jur 2d, Special or Local Assessments § 35.
 Widening of city street as local improvement justifying special
 assessment of adjacent property. 46 ALR3d 127.
[5] 70 Am Jur 2d, Special or Local Assessments § 6.
[6, 9] 70 Am Jur 2d, Special or Local Assessments § 158.
[7] 27 Am Jur 2d, Equity §§ 266, 267.
[11] 70 Am Jur 2d, Special or Local Assessments § 34.
[12] 70 Am Jur 2d, Special or Local Assessments § 113.

residents and businesses and its widening and improvement is designed to benefit primarily the public at large and to ameliorate conditions caused by its increased use of the road, there is no special benefit to residential owners warranting a special assessment.

3. The need for and primary purpose of road improvements was to facilitate the passage of traffic through the assessment district on a major thoroughfare. The benefits found by the trial court all relate to conditions brought about by heavy use of the road by persons residing outside the district. A five-lane highway was not required for use of residents and businesses in the district.

4. The plaintiffs here were not specifically benefitted. Location of the widened highway closer to the plaintiffs' homes than to other Inkster properties does not in itself justify requiring a special contribution to help defray the cost.

Justice Ryan dissented on the ground that the establishment of special assessment districts and the determination of the amount to be assessed on a particular property are legislative acts. The Court should not review the exercise of the legislative power to tax solely on the grounds of unwisdom or its own view of public policy. The proper inquiry for review is whether the trial court was clearly in error in finding that the property of the plaintiff and similarly situated property owners was specially benefitted. In the absence of fraud or bad faith, or of a plan incapable of producing reasonable equality, the legislative judgment will be presumed to be valid. There is ample evidence in the record to support the finding of the trial court that the assessed properties did receive substantial, not merely incidental, benefits beyond those enjoyed by members of the general public. The fact that the improvement also conferred a substantial benefit on the general public does not in any way affect the validity of these special assessments. Further, it was not unreasonable to assume that property within a certain distance from the improvement would receive substantial benefits. Special assessments for road improvements need not be made only against abutting property. Nor was the mode of assessment incapable of producing reasonable equality for benefits received. The fact that the contract with Wayne County was entered into prior to completion of arrangements for financing substantially complies with the applicable city charter provision and special assessment ordinance by making its liability conditional on successful financing.

Reversed.

56 Mich App 581; 224 NW2d 664 (1974) reversed.

OPINION OF THE COURT

1. MUNICIPAL CORPORATIONS—TAXATION—SPECIAL ASSESSMENT.

The theory of a special assessment for a public improvement is that a special benefit has been conferred upon the property assessed, over and above that conferred upon the community itself.

2. MUNICIPAL CORPORATIONS—TAXATION—SPECIAL ASSESSMENT— HIGHWAYS.

The location of an improved public highway closer to homes in a special assessment district than to other properties in the city does not in itself justify requiring the closer property owners to make a special contribution to defray the cost of improvement.

3. MUNICIPAL CORPORATIONS—TAXATION—SPECIAL ASSESSMENT.

The principle that persons who are made to bear the cost of a public work are at the same time to suffer no pecuniary loss thereby does not accommodate an assessment to defray the cost of rectifying conditions mainly brought about by the public at large and not specially and peculiarly related to the use or needs of persons residing in the assessment district.

4. MUNICIPAL CORPORATIONS—TAXATION—SPECIAL ASSESSMENT— HIGHWAYS.

There is no special benefit to residential owners from highway improvements warranting a special assessment where the existing road is adequate for the use of local residents and businesses, and its widening and improvement is designed to benefit primarily the public at large and to ameliorate conditions caused by increased use of the road by persons residing outside the assessment district.

DISSENTING OPINION BY RYAN, J.

5. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENT—PUBLIC IMPROVE- MENTS.

*The establishment of special assessment districts to finance the cost of public improvements and the determination of the amount to be assessed on a particular property are legislative acts (MCL 117.4d[1]; MSA 5.2077[1]).*

6. TAXATION—APPEAL AND ERROR.

*Courts do not review the exercise of the legislative power to tax solely on the grounds of unwisdom or the courts' own view of public policy.*

7. APPEAL AND ERROR—EQUITY—DE NOVO REVIEW.

> The scope of review in chancery cases is de novo; the court rule that says the standard on appeal is whether the findings of the trial court were clearly erroneous does not alter an appellate court's power of review in chancery cases (GCR 1963, 517).

8. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENT—APPEAL AND ERROR.

> A special assessment for a public improvement should be upheld where there are special benefits to the property specially assessed, such as an increase in value, relief from a burden or a special adaptability in the land.

9. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENT—APPEAL AND ERROR.

> The courts will ordinarily not disturb the judgment of a legislative body as to the inclusion or exclusion of specific property in a special assessment district or the proper amount of individual assessments where the legislative body has correctly determined that special benefits exist; in the absence of fraud or bad faith, or of a plan incapable of producing reasonable equality, the legislative judgment will be presumed to be valid.

10. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENT—HIGHWAYS.

> The fact that a highway improvement conferred a substantial benefit on the general public does not affect the validity of a special assessment where the assessed property itself received substantial, not merely incidental, benefits beyond those enjoyed by members of the general public.

11. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENT—HIGHWAYS.

> Special assessments for road improvements need not be made only against abutting property; it is entirely reasonable to assume that properties closer to the next street running parallel to a highway improvement would be likely to receive fewer benefits than those closer to the highway.

12. MUNICIPAL CORPORATIONS—HOME RULE CITIES—HIGHWAYS—FINANCING.

> A contract between the City of Inkster and Wayne County for highway improvements which was entered into prior to completion of arrangements for financing substantially complies with a city charter and special assessment ordinance providing that contracts for public works or improvements shall not be made until provision is made for financing where the city's liability was made conditional on successful financing.

*Sommers, Schwartz, Silver, Schwartz, Tyler & Gordon, P. C.* (by *David L. Nelson*), for plaintiff.

*Harrison & Friedman, P. C.* (by *Bernard A. Friedman*), for the City of Inkster.

LEVIN, J. This is an action to enjoin collection of a special assessment for the widening of a section of Middlebelt Road levied against lots on residential streets having an outlet on the widened thoroughfare.[1]

The project was designed to eliminate traffic bottlenecks in the cities of Inkster and Westland caused by Middlebelt being narrower in those cities than it is to the north and south; the road was two lanes wide in Inkster and Westland, four lanes on the north and five lanes on the south. Safer and better access to Middlebelt is the special and peculiar benefit that assertedly justifies requiring the owners of interior residential lots to contribute to the cost.

Middlebelt is a county primary road extending north from the City of Inkster, in Wayne County, into Oakland County and extending south to the I-94 Expressway, Metropolitan Airport and beyond. It carries heavy traffic including large trucks going to and from the airport.

The Inkster section of Middlebelt was widened into a five-lane highway with two lanes each for north- and southbound traffic and a center left turn lane. Curbs, gutters and drainage facilities were also added.

The cost of the project was shared by the county

---

[1] Abutting commercial property was also assessed, but no issue is raised regarding such assessments in this class action in behalf of the owners of interior residential lots.

Residential lots abutting Middlebelt were not assessed; *see Fluckey v Plymouth,* 358 Mich 447; 100 NW2d 486 (1960), discussed in the text, *infra.*

road commission and the cities. Inkster created a special assessment district to pay approximately one-half of its share of the cost.[2] The district consists of two land areas, one on each side of Middlebelt, 4000 feet along that road and 1500 feet deep.[3]

The trial judge found that the widening and improvement conferred a special benefit on the owners of interior residential lots justifying the special assessment. The Court of Appeals affirmed. We reverse.

"[T]he theory of the special assessment is that a special benefit has been conferred, over and above that conferred upon the community itself." *Fluckey v Plymouth,* 358 Mich 447, 453; 100 NW2d 486 (1960).[4] The Court held that the widening of a two-lane rural blacktop road that was "amply adequate" for abutting residential owners into a four-lane concrete highway capable of carrying heavier vehicles did not confer a special benefit on abutting residential property. The Court saw the widening, improvements and changed conditions as a detriment to abutting residential owners.

Ten years later, in *Brill v Grand Rapids,* 383 Mich 216; 174 NW2d 832 (1970), *Fluckey* was applied in setting aside a special assessment against residential property abutting a quiet resi-

---

[2] There are approximately 800 homes in the district ranging in value from $10,000 to $24,000. The final assessment was $109.80 for single-family residences and $219.60 for two- and four-family residences.

[3] Fifteen hundred feet is approximately one-half the distance to the next major street providing access to Michigan Avenue, a state highway.

[4] "It is the settled law that special assessments may be sustained upon the theory that the property assessed receives some special benefit from the improvement differing from the benefit that the general public enjoy." *Lansing v Jenison,* 201 Mich 491, 497; 167 NW 947 (1918).

dential two-lane blacktop road transformed into a four-lane highway.

Although Middlebelt could not be characterized as a rural road or a quiet residential street and these interior residential lots do not abut the widened highway, the plaintiffs here, as in *Fluckey* and *Brill,* were not specially benefitted.

Every public improvement is "local" in the sense that it is located in a particular area; libraries, fire and police stations and street improvements are all located closer to property owned by some persons than to property of others.[5] The location of this widened highway closer to plaintiffs' homes than to other Inkster properties does not in itself justify requiring a special contribution to defray the cost.

The argument in support of the assessment is that traffic moves better because the bottlenecks have been eliminated. Eliminating the bottlenecks improves access to and from Middlebelt and interior lots. Interior lots should increase in market value because access is better or, at the very least, there is the benefit of safer and easier travel to and from homes in the assessment district.

Middlebelt was acknowledged by one of the city's experts to be a major thoroughfare. The need for the road improvements and their primary purpose was to facilitate the passage of traffic through the assessment district. See *Brill v Grand Rapids, supra,* p 222. As stated by one of the city's witnesses, "Middlebelt extends from the freeway to the north, here, up into the next county. The traffic is there, and you have to make provision for

---

[5] "An improvement is not a local improvement merely because it is constructed in a particular locality, since every improvement has a particular location, and is also local in the sense of being nearer to some persons and property than to others." 70 Am Jur 2d, Special or Local Assessments, § 20, p 860.

the *expeditious movement of that traffic,* because that provides safer travel for the residents in the area and less of a nuisance factor" (emphasis added).

Another witness for the city testified that a master plan proposed the use of Middlebelt "as a major thoroughfare to handle truck traffic".

While the improved road contains features such as the left-turn lane benefitting local residents, the primary purpose of both that lane and the need for it is to facilitate the movement of through traffic.

The benefits found by the trial judge—elimination of hazardous traffic conditions and of the deteriorated condition of Middlebelt, improved access to and improved movement of through traffic on Middlebelt—and the factors emphasized by the Court of Appeals,[6] all relate to conditions brought about by the heavy use of Middlebelt by persons residing outside the assessment district.

The asserted benefit to residents of the assessment district is in being relieved of conditions caused by increased use of Middlebelt by nonresidents. But for heavy and increasing use by nonresidents, the road would have been "amply adequate" for the needs of the residents and businesses in the district. A five-lane highway was not required for their use.

The principle that persons who "are made to bear the cost of a public work, are at the same time to suffer no pecuniary loss thereby"[7] does not

[6] Police officers and firefighters "can reach their destinations considerably faster". Residents of the district will be benefitted by "a safer and faster-moving Middlebelt [Road]". "[I]mproved * * * access * * * enhanced the value of these lots * * * ." *Johnson v Inkster,* 56 Mich App 581, 588; 224 NW2d 664 (1974).

[7] "The justice of demanding the special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of a public work, are at the same time to

accommodate an assessment to defray the cost of rectifying conditions mainly brought about by the public at large and not "specially and peculiarly"[8] related to the use or needs of persons residing in the assessment district. The plaintiffs' homes were not specially and peculiarly advantaged by restoring safe and ready access to and from a road adequate to serve their needs and which would have remained adequate but for pre-emptive use emanating from outside the assessment district. "There has been no enhancement." *Fluckey v Plymouth, supra,* p 454.

The "elimination of open ditches and swales which occasionally contain stagnant water", also mentioned by the judge, was of primary benefit to abutting property owners, and only incidentally benefitted interior lot owners. We respond, as did the Court in *Fluckey,* where it was asserted that abutting owners had benefitted not only from the widening of the road but also from the elimination of dirt shoulders and the filling of depressions or ditches along the old road: "The doctrine of *de minimis* is fully applicable to alleged benefits conferred by the elimination of problems so nebulous." *Fluckey v Plymouth, supra,* p 454.

We conclude that where an existing road is adequate for the use of local residents and businesses and its widening and improvement is designed to benefit primarily the public at large and to ameliorate conditions caused by its increased use of the road, there is no special benefit to residential owners warranting a special assessment.

---

suffer no pecuniary loss thereby; their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay." 2 Cooley, Taxation (3d ed), p 1154, quoted with approval in *Fluckey v Plymouth,* 454.

[8] 2 Cooley, *supra,* p 1153, quoted with approval in *Fluckey v Plymouth,* 453.

Reversed. Costs to appellant.

Kavanagh, C. J., and Williams, Coleman, and
Fitzgerald, JJ., concurred with Levin, J.

Ryan, J. *(dissenting)*. I dissent.

Plaintiff Willie Johnson initiated this action as
representative of a class of similarly situated prop-
erty owners subject to a special assessment levied
by the City of Inkster to finance a portion of its
share of the cost of widening Middlebelt Road. The
assessment district consisted of nonabutting inte-
rior residential property on each side of the im-
proved portion of the road, extending approxi-
mately halfway to the next major north-south
street parallel to Middlebelt.

The distinguished trial judge, James Montante,
sustained the assessment, finding it to be not in
contravention of law, and that decision was af-
firmed by the Court of Appeals. *Johnson v Inkster,*
56 Mich App 581; 224 NW2d 664 (1974).

I

The trial court found that the improvement to
Middlebelt Road conferred a special benefit on the
assessed interior properties, a finding affirmed by
the Court of Appeals. My colleagues reverse, find-
ing "[t]here has been no enhancement" and, in
justification thereof announce a standard for meas-
uring "special benefit" which is heretofore un-
known in the law[1] and without logical basis. I
cannot agree.

The City of Inkster, as a home-rule city, pos-

[1] "We conclude that where an existing road is adequate for the use
of local residents and businesses and its widening and improvement is
designed to benefit primarily the public at large and to ameliorate
conditions caused by its increased use of the road, there is no special
benefit to residential owners warranting a special assessment."

sesses the authority by virtue of § 4d(1) of the
home rule cities act and its own charter to levy
special assessments on specially benefited districts
to finance the cost of public improvements. MCLA
117.4d(1); MSA 5.2077(1). The power to levy special
assessments is derived from the power to tax.
*Williams v Mayor of Detroit,* 2 Mich 560 (1853).
We have repeatedly said that the establishment of
special assessment districts and the determination
of the amount to be assessed on a particular
property are legislative acts. *In re Petition of
Macomb County Drain Comm'r,* 369 Mich 641; 120
NW2d 789 (1963); *Crampton v Royal Oak,* 362
Mich 503; 108 NW2d 16 (1961); *Cummings v Gar-
ner,* 213 Mich 408; 182 NW 9 (1921); *Voigt v
Detroit,* 123 Mich 547; 82 NW 253 (1900). We do
not review the exercise of the legislative power to
tax solely on grounds of unwisdom or our own
view of public policy. *Ford Motor Co v State Tax
Commission,* 400 Mich 499; 255 NW2d 608 (1977).

Our role in this type of case is a limited one.

The proper inquiry for our review is whether
the trial court was clearly in error in finding that
the property of plaintiff and similarly situated
property owners was specially benefited. GCR
1963, 517. In chancery cases the scope of review
has also been stated as being *"de novo",* but in
*Papin v Demski,* 383 Mich 561; 177 NW2d 166
(1970), we said that GCR 1963, 517 did not alter an
appellate court's power of review in those cases.

The trial court correctly stated that the assess-
ment should be upheld where there are special
benefits to the property specially assessed, such as
an increase in value, relief from a burden or a
special adaptability in the land. *Soncoff v Inkster,*
22 Mich App 358; 177 NW2d 243 (1970). Where the
legislative body has correctly determined that spe-

cial benefits exist, the courts will ordinarily not disturb its judgment as to the inclusion or exclusion of specific property in the special assessment district or the proper amount of individual assessments. These are questions concerning which reasonable people may widely and honestly differ. In the absence of fraud or bad faith, or the following of a plan incapable of producing reasonable equality, the legislative judgment will be presumed to be valid. *Crampton v Royal Oak, supra; Marks v Detroit,* 246 Mich 517; 224 NW2d 619 (1929).

The trial court found that properties in the assessment district were specially benefited as a result of the improvements to Middlebelt through: improved access; elimination of hazardous traffic, deteriorated road conditions, and open ditches and swales; stabilization of the neighborhood; and enhancement of the value of assessed property.

There is ample evidence in the record to support the finding of the trial court that the assessed properties did receive substantial, not merely incidental, benefits beyond those enjoyed by members of the general public. The testimony of experts in the areas of property appraisal and municipal finance supports the conclusion that the project would appreciably improve the surrounding neighborhood. I do not conclude I would have arrived at a different result had I been in the position of the trial judge. *Papin v Demski, supra; Christine Building Co v Troy,* 367 Mich 508; 116 NW2d 816 (1962).

Moreover, I do not agree that the fact that the improvement to Middlebelt conferred a substantial benefit on the general public in any way affects the validity of these special assessments. The county taxpayers and the taxpayers of the City of Inkster have assumed a substantial share of the

burden. The County of Wayne assumed 60% of the cost of the improvement and the City of Inkster assumed slightly more than 20%. The assessed property was itself specially benefited. I cannot say plaintiff class was asked to pay for benefits received by the general public or that the share of the cost imposed on them exceeded the benefits received and, therefore, I perceive no denial of due process. See *Detroit v Judge of Recorder's Court*, 112 Mich 588; 70 NW 149 (1897).

*Fluckey v Plymouth*, 358 Mich 447; 100 NW2d 486 (1960), and *Brill v Grand Rapids*, 383 Mich 216; 174 NW2d 832 (1970), do not compel us to enjoin the assessment levied by the City of Inkster. *Fluckey* involved an assessment against residential property abutting a road improved from two lanes of blacktop road to a four-lane concrete highway. The Court said:

"It must be stressed that the facts before us do not involve a mere error in judgment on the part of assessing authorities. We do not trifle with such. Nor do they involve the substitution of the judgment of the court upon the worth of special benefits conferred. The assessors, not the court, weigh the benefits, if, in truth, there are benefits to be weighed. The point here is more fundamental: where, viewed in its entirety, no benefit upon abutting property owners has been conferred by the improvement, but rather a detriment suffered, a special assessment based upon the enhancement of the value of the property is a fraud in law upon such property owners." 358 Mich 447, 454.

*Brill* relied on *Fluckey* and, like the latter, found a showing of detriment resulting from one's home being within a few feet of a major thoroughfare. It applies to *abutting* residential property. The special assessment district we consider here contains no abutting residential property.

## II

Plaintiff class further contends that the formula used to determine the amount of the special assessment and the perimeters of the special assessment district were arbitrarily and capriciously determined. I cannot agree.

First, it was not unreasonable to assume that property within a certain distance from the improvement would receive substantial benefits. Boundaries must be drawn. It was entirely reasonable to assume that properties closer to the next major north-south street would be likely to receive fewer benefits. Special assessments for road improvements need not be made only against abutting property. There is no reason to assume benefits cease at property lines. See *Goodrich v Detroit,* 123 Mich 559; 82 NW 255 (1900). The trial court was not clearly in error in finding that plaintiff had not shown the perimeters of the district were arbitrarily drawn.

Nor was the mode of assessment incapable of producing reasonable equality. See *Crampton, supra.*

The trial court found that the city assessor first estimated that the interior properties benefited by at least $150 and that he then adopted a "unit of benefit method" of apportionment ultimately resulting in an assessment on single-family dwellings in the amount of $109.80, and $219.60 on multiple-family dwellings.

This method of assessment is a far cry from the one found arbitrary and impermissible in *I. H. Gingrich & Sons v Grand Rapids,* 256 Mich 661; 239 NW 876 (1932), in which property on one side of the pavement was assessed more than twice as much as owners of equal frontage on the other

side. In contrast, the assessments here in question were reasonably designed to achieve a fair exaction for benefits received. I would not disturb the presumptively valid determination of the Inkster City Council.

It is also argued that the assessments are invalid because the contract for construction between the County of Wayne and the city was made in violation of the city charter and special assessment ordinance.

The Inkster charter provides that contracts shall not be made for public works or improvements until provision is made for financing. The contract with Wayne County was entered into prior to the completion of arrangements for financing, but the city's liability thereunder was made conditional on the successful acquisition of funds.

I concur in and adopt the reasoning of the Court of Appeals.

That court affirmed the trial court's finding that the agreement substantially complied with the applicable law. The city charter provision and special assessment ordinance relied on are designed to prevent the city from constructing improvements that it does not have the means to pay for. By making its liability conditional on successful financing, the city complied with the spirit and purpose of its ordinance provision. This case is distinguishable from *Smith v Garden City,* 372 Mich 189; 125 NW2d 269 (1963), where an improvement was completed three years prior to the levy of an assessment to pay for it, completely foreclosing a charter-guaranteed right to have a public hearing and opportunity to object to the improvement and assessment.

Plaintiff class's final contention is totally without merit.

### III

My colleagues would hereby remove from home-rule cities the authority to use special assessments against residential property to finance certain road improvements. The use of special assessments has long been an acceptable means for local governments to finance local improvements. This Court has traditionally deferred to those units and upheld their use of the special assessment mode of financing except where those bodies have abused their discretion. I would not decrease the flexibility available to cities of widely differing resources and needs by forever precluding them from making reasonable use of such special assessments to achieve an orderly plan to pay for a scheme of local road improvements.

I would affirm the decision of the Court of Appeals.

BLAIR MOODY, JR., J., took no part in the decision of this case.